NATHANIEL COX, NATHANIEL AND JAMES DICK, PLAINTIFFS
  IN ERROR V. THE UNITED STATES, DEFENDANTS IN
  ERROR.

The United States instituted a suit in the district court of the United States
  for the eastern district of Louisiana, according to the practice of that state,
  upon a joint and several bond given by a navy agent and his sureties, and a
  verdict and judgment were entered in favour of the plaintiffs against the three
  defendants; which entry stated the sums for which the defendants were
  jointly and severally liable to the United States, according to the judgment.
  On the trial, one of the defendants took a separate defence; and he afterwards
  prosecuted a writ of error to this court, without joining the other two defend-
  ants in the writ. The other defendants also issued a separate writ of error;
  and the plaintiffs in error in each writ gave several appeal bonds. The court
  overruled a motion to dismiss the cause: the ground of the motion being, that
  but one writ of error could be sued out; and that all the defendants should have
  united in the same.
The petition by which the suit on the bond was instituted, states the debt to be
  fifteen thousand five hundred and fifty-five dollars, and eighteen cents. The
  verdict of the jury was for twenty thousand dollars; and upon this a judgment
  was entered up against the estate of two of the obligors in the bond, jointly
  and severally for twenty thousand dollars, and a judgment against two of the
  legal representatives of one of the obligors for ten thousand dollars each.
  " Upon no possible ground can this judgment be sustained."
The principles which have been established by the decisions of this court relative
  to the admission of treasury transcripts in evidence, in suits by the United
  States against public officers.
A bond was given by the navy agent at New Orleans and his sureties to the
  United States, conditioned that he should faithfully account for all public
  moneys received by him, &c. The sureties to the bond having been sued on
  the same, after his insolvency and decease, claimed that the United States
  were bound to divide their action, and take judgment against each surety for
  his proportion of the sum due, according to the law of Louisiana; considering
  it a contract made there, and to be governed in this respect by the law of that
  state. Held, that the liability of the sureties must be governed by the rules
  of the common law; the accountability of the principal being at the city of
  Washington, to the treasury of the United States; and the bond being joint and
  several, each is bound for the whole: and that the contribution between the
  sureties is a matter with which the United States have no concern.
The general rule of law is well settled, that the law of the place where the con-
  tract is made, and not where the action is brought, is to govern in enforcing
  and expounding the contract; unless the parties have a view to its being exe-
  cuted elsewhere: in which case it is to be governed according to the law of the
  place where it is to be executed.
Admitting the bond to have been signed at New Orleans, it is very clear that the
  obligations imposed upon the parties thereby, looked for its execution to the
  city of Washington. It is immaterial where the services as navy agent were

[Cox and Dick v. The United States.]

to be performed: his accountability for non-performance was to be at the seat of government. He was bound to account, and the sureties undertook that he should account for all public moneys received by him, with such officers of the government of the United States as are duly authorised to settle and adjust his accounts. The bond is given with reference to the laws of the United States on that subject; and such accounting is required to be with the treasury department at the seat of government; and the navy agent is bound by the terms of the bond to pay over such sum as may be found due to the United States on such settlement; and such paying over must be to the treasury department, or in such manner as shall be directed by the secretary. The bond is therefore in every point of view in which it can be considered, a contract to be executed at Washington; and the liability of the parties must be governed by the rules of the common law.

ERROR to the district court of the United States, for the eastern district of Louisiana.

On the 19th of October 1825, the district attorney of the United States filed, in the district court of the United States for the district of Louisiana, the following petition, and a copy of a bond, on which the cause of action stated in the petition was founded.

The petition of the United States, by their attorney, prosecuting within and for said district, respectfully states, that Joseph H. Hawkins, late of New Orleans, navy agent of the United States, now deceased, John Dick, late of New Orleans, now deceased, and Nathaniel Cox, of the same place, on the 10th day of March in the year of our Lord 1821, were indebted to the United States in the sum of twenty thousand dollars, for the amount of their obligation in writing, sealed with their seals, for the said sum, bearing date the said day and year, and payable, jointly and severally, by them, their heirs, executors and administrators; as will appear by a certified copy thereof hereunto annexed. To which said obligation a condition was annexed, wherein it was provided, that if the said Joseph H. Hawkins should regularly account, when thereunto required, for all public moneys that might be received by him, from time to time, and for all public property committed to his care, with such person or persons, officer or officers of the general government of the United States as should be duly authorised to settle and adjust his accounts; and should moreover pay over, as he might be directed, any sum or sums that might be found due to the United States upon any such settlement or settlements; and should also faithfully discharge, in

every respect, the trust reposed in him, then the said obligation should be void, else it should remain in force.

And the United States further state, that the said Joseph H. Hawkins did not, in his lifetime, regularly account, as aforesaid, for all public moneys received by him, from time to time, and for all public property committed to his care; and did not pay over, as aforesaid, any sum or sums of money due to the United States as aforesaid; and did not faithfully discharge, in every respect, the trust reposed in him, as aforesaid; but did, at his death, remain indebted to the United States in a large balance of money, to wit, the sum of fifteen thousand five hundred and fifty-three dollars eighteen cents, for moneys, from time to time, since the date of the said obligation, received from the United States, as navy agent as aforesaid: by reason of all which, the condition of the said obligation hath become broken, and the said debt become due; wherefore they pray process of summons against the legal representatives of the said Joseph H. Hawkins, deceased, and of the said John Dick, deceased, and against the said Nathaniel Cox; and after due proceedings had, that judgment may be rendered against them for the said debt, with interest and costs.

J. W. SMITH, Attorney U. S.

Copy of bond annexed to the petition.—Know all men by these presents, that we, Joseph H. Hawkins, as principal, and John Dick and Nathaniel Cox, as securities, are held and firmly bound unto the United States of America, in the sum of twenty thousand dollars, current money of the United States, to be paid to the said United States, for which payment, well and truly to be made and done, we bind ourselves, and each of us, our and each of our heirs, executors, and administrators, in the whole and for the whole, jointly and severally, firmly by these presents. Sealed with our seals, and dated this tenth day of March, Anno Domini 1821.

The condition of the above obligation is such, that if the above bonded Joseph H. Hawkins shall regularly account, when thereunto required, for all public moneys received by him, from time to time, and for all public property committed to his care, with such person or persons, officer or officers, of the government of the United States, as shall be duly authorised to settle and adjust his accounts, and shall, moreover, pay

over, as he may be directed, any sum or sums that may be found due to the United States upon any such settlement or settlements, and shall also faithfully discharge, in every respect, the trust reposed in him, then the above obligation to be void and of no effect, otherwise to remain in full force and virtue.

The bond was duly executed by the obligors, and then approved by the district attorney of the United States for the Louisiana district. The copy was regularly certified from the navy department.

Citations were issued from the office of the clerk of the court on the 20th October 1827, &c. to " the legal representatives of J. H. Hawkins, deceased," " the legal representatives of John Dick, deceased," " and to Nathaniel Cox;" to appear and answer, &c. The marshal returned non est inventus as to the legal representatives of J. H. Hawkins," and " served on the legal representatives of John Dick, deceased," and on " Nathaniel Cox." The separate answer of Nathaniel Cox, filed on the 11th of December 1825, stated, that he did sign the bond sued upon as surety of the late J. H. Hawkins, navy agent; but he denies that the sum of $15,553 18 is due by the sureties, as stated in the petition, but only $12,682 46; for this, that since the decease of the said J. H. Hawkins, he has paid on his account, and been allowed in credits at the treasury of the United States, the sum of $7,317 54, deducting which from the amount of said bond, $20,000, leaves the aforesaid sum of twelve thousand six hundred and eighty-two dollars forty-six cents.

And that, as between himself and his co-surety, he is entitled to a credit for this sum, $7,317 54, deducting which from the amount of $10,000, or one half the penalty of said bond, there will remain due by him the sum of $2,682 46, and by his co-surety the remainder of the sum, viz. $10,000, which apportionment he prayed may be made and allowed to him as against his co-surety, with all other and further relief which he may be entitled to.

On the 27th February 1828, on motion of the district attorney, and on giving the court to understand that Mrs Todd, a surviving sister, and one of the heirs of John Dick, deceased, resided out of the district, in the state of Virginia, the court

ordered that Levi Peirce, Esq., attorney of Nathaniel and John Dick, two of the heirs of John Dick, deceased, be appointed curator, ad hoc, of Mrs Todd herein.

On the 3d March 1820, Nathaniel Cox filed a supplemental answer, representing that the succession of his co-security, John Dick, was solvent, and able to pay the debt claimed. He demanded that the United States divide their action, reducing their demand to the amount of the share and proportion due by each surety.

On the 20th May 1828, Nathaniel and James Dick filed their answer to the petition of the United States; that no amicable demand has been made according to law, and that they are, therefore, not bound for any expenses of this suit; and they further answer, that they are two of three heirs of J. Dick, who have accepted the succession of said J. Dick, with benefit of inventory; the third heir being Sarah Dick, wife of J. Todd, of the state of Virginia, citizen: and that, therefore, they are in no event bound for more than two-thirds of any debt of said J. Dick; that the debt now claimed, they deny is in any manner due by the estate of John Dick, but should the same be proved, they say that they have not received more than four thousand dollars of the estate of J. Dick, and are liable for no more than two thousand dollars each, of which they pray judgment and trial by jury; and that they may be dismissed with, &c.

The court, on the 19th December 1829, on the plea of Nathaniel Cox for a division of the action, overruled the same.

The cause came on for trial before a jury on the 2d January 1830, when a "verdict for plaintiffs for twenty thousand dollars, being the amount of the bond," was rendered.

Bills of exceptions were tendered, and sealed by the court on the trial; which stated, that "Nathaniel Cox offered to prove, under the prayer of his answer, that his co-surety should be decreed to contribute in payment, according to their respective shares; that certain payments had been made in diminution of the balance of said Hawkins, since his death, and before the date of the transcript, produced in evidence by the district attorney, by the said Cox; and for this purpose, offered in evidence a certain transcript from the treasury books, duly certified; the introduction of said testimony was opposed

by the counsel for the heirs of John Dick, his co-surety; on the ground that in this suit there could be no examination of the rights of the sureties as between themselves; which objection being sustained by the court, the testimony was rejected."

And " that Nathaniel Cox also offered in evidence another transcript from the books of the treasury, duly authenticated, purporting to be a list of payments made and receipts taken, and passed at the treasury of the United States, in the name of said Joseph H. Hawkins, since the 30th September 1823, (it having been previously shown that the said Hawkins died on the first of October 1823) in support of the allegations in his answer, that he had paid the sum of $7,317 54, since the decease of said Hawkins, in his capacity of surety; the introduction of said testimony was opposed by the attorney of the United States, on the ground that no credits could be allowed but such as had been presented at the treasury, and refused; which objection being sustained by the court, the evidence was refused; and the same defendant having further offered in evidence the account of said Joseph H. Hawkins, as navy agent, with the Bank of the United States, in this city, during the months of August and September, immediately preceding his death, in support of his said plea, the attorney for the United States objected to the introduction of the same, on the ground that the same could not be evidence against the United States; the court sustained, also, this objection, and overruled the testimony."

On the 11th January 1830, Nathaniel Dick and James Dick filed a motion in arrest of judgment, stating that there was not in the case the number of parties required by law, the other heir not having filed any answer, or not being in court by judgment by default; that the judgment cannot be against two heirs for the whole amount due by John Dick, when it is on record, by motion of the United States district attorney, that there is another heir, to wit, Sarah Todd, the motion of the said attorney being on the 27th February 1828, as extracted from the record book: " on motion of the district attorney, and on giving the court to understand that Mrs Todd, a surviving sister and one of the heirs of John Dick, deceased, resident out of the district, to wit, in the state of Virginia, ordered, that Levi Peirce, Esq., attorney of Nathaniel Dick and

James Dick, two of the heirs of John Dick, deceased, be appointed curator, ad hoc, of the said Mrs Todd herein."

The motion in arrest of judgment was overruled by the court; and on the 18th of January 1830, judgment was entered in favour of the United States in the following terms:

"The United States v. Representatives of Hawkins et al.—The court having maturely considered the motion in arrest of judgment, now order that judgment be entered up, as of the 15th instant, against the estate of John Dick and Nathaniel Cox, jointly and severally, for the sum of twenty thousand dollars, with six per cent interest from the 2d day of January 1830, until paid, and costs of suit; and that judgment be entered up against Nathaniel Dick and James Dick for the sum of ten thousand dollars each, with six per cent interest from 2d January 1830, until paid, and the costs.

SAMUEL H. HARPER, Judge U. S."

The defendants, on the 20th of January 1830, paid into court the sum of twelve thousand six hundred and eighty-two dollars forty-six cents, on account of the judgment.

Nathaniel Cox, on the 21st January 1830, issued a writ of error to this court; and on the same day he filed an appeal bond, conditioned to prosecute the same with effect. The bond recited that he had filed a petition praying that a writ of error may be allowed to him from a certain final judgment rendered against him in the suit of the United States against the heirs and representatives of Joseph H. Hawkins, the heirs and representatives of John Dick, and Nathaniel Cox, in the district court of the United States in and for the eastern district of Louisiana.

The writ of error alleged that in the proceedings in the case in the district court of Louisiana, "manifest error had intervened to the great damage of the said Nathaniel Cox."

Afterwards, on the 22d January 1830, "Nathaniel Dick and James Dick, two of the heirs of John Dick deceased," prayed a writ of error to this court which was awarded; and an appeal bond was given by them on the 25th of January 1830, which recited that they "had filed a petition, praying that a writ of error may be allowed to them from a certain final judgment rendered against them in the suit wherein the United States are plaintiffs, against the heirs and legal represen-

tatives of Joseph H. Hawkins, the heirs and legal representatives of John Dick, and Nathaniel Cox, defendants, in the district court of the United States for the eastern district of Louisiana.''

This writ of error stated that the court were informed that in giving the judgment in the case " manifest error had intervened" "to the great damage of Nathaniel Dick and James Dick, two of the heirs of said John Dick."

Separate citations were issued upon each writ of error. Upon the first, the citation required the United States " to show cause why the judgment rendered against Nathaniel Cox should not be reversed." On the second, the defendants in error were required to show cause " why the judgment rendered against Nathaniel Dick and James Dick should not be reversed."

The case, at an early day of the term, on the motion of Mr Taney, attorney general of the United States, was dismissed; no appearance having been entered for the plaintiffs. It was afterwards reinstated, on motion of Mr Johnston, who appeared as the plaintiffs' counsel.

Afterwards, the attorney general of the United States moved the court " to quash the writ of error in the cause, because all the parties had not joined in the writ of error, the judgment in the court below being joint and several; but had sued out several writs of error."

Before proceeding to argue the motion, Mr Taney asked the court, if his having, on a former day, appeared in the case for the purpose of moving to dismiss the writs of error, was to be considered as a general appearance. The court stated, that they considered it a special appearance, for the purpose of the motion only.

For the United States it was contended, that all the defendants should have united in the same writ of error. The judgment being joint and several, it must stand against all; unless it should be reversed against all.

The defendant, Nathaniel Cox, made a separate application for a writ of error, gave a separate bond, and issued a separate citation, calling on the United States to sustain the validity of the judgment of the district court against himself only. The

other plaintiffs in error, Nathaniel and James Dick, also proceeded separately by writ of error, bond and citation, and they require the defendants in error "to show cause why the judgment against them shall not be reversed."

Thus, therefore, the whole character of the case is changed, when brought to this court. Here the proceedings are separate and distinct; the parties are different from those in the joint proceedings below; they came here by different writs of error; and call upon the United States to appear in this court by different citations, and for separate purposes.

It is absolutely necessary in proceedings at the common law, that all the parties to a judgment shall unite in the writ of error to the superior court, unless, by regular process, they have been severed. The writs of error by which the case is brought up are not in the proper form. They state a separate judgment to have been rendered in Louisiana, and the record shows a joint and several judgment. Cited 9 Petersdorf's Ab. 10, note; 11 Wheaton, 414.

If the case can be brought up separately, one party may present it to this court at one time, and the other at another time.

The question is unimportant in the final disposition of the case, unless, if the writs of error are erroneous, the security which is given in the court below will thereby be released; and thus the United States be deprived of the benefit of the appeal bond, the writs of error being a supersedeas.

Although the proceedings in the court of Louisiana are not according to the common law while in that district, yet when these proceedings are brought to this court, they must go on according to the common law rule; and so the act of congress considers the subject. Nor can the parties in such a case be without remedy. If the usual forms of the common law in cases of writs of error will not apply to such a case as this; and the proceedings in the courts of Louisiana, being according to the civil law, require a different form of a writ of error to meet the actual situation of the parties; this court has full authority by law to frame the proper and competent process.

For the plaintiffs in error, Mr Johnston of Louisiana stated, that he felt no particular interest in this question, except as a general rule of practice; inasmuch as the dismissal would not

[Cox and Dick v. The United States.]

preclude the plaintiffs from bringing up the writ of error in any form that might be prescribed, within the time allowed by law. The law of congress does not prescribe the manner of suing out a writ of error. It is therefore left to the rules of practice, which the court may adopt, to facilitate the uniform regular administration of justice. No rule has been established in this case.

The court in general refer to the laws and practice in England, not as law, but as a guide; as the evidence of what enlightened men have considered, in the country from which we borrow our terms of law, as the best rules of practice.

It is true, by the laws of England, that all persons who may be damnified by a judgment, may sue out a writ of error, even those indirectly and remotely interested. It is true also as a general rule, that all parties must join in a writ of error. But if the parties do not or will not join, the court order a *summons* and *severance;* and that proceeding authorizes any party to proceed in the writ. If the court therefore adopt the rule that all must join, they must also adopt the remedy of ordering, in all proper cases, a severance of the parties; and this makes the whole affair a mere matter of form.

It must be obvious, that in many cases all the parties will not join in the appeal: sometimes they are satisfied with the judgment; often they have no interest in reversing it. It will sometimes occur that the judgment is favourable to one defendant, and unfavourable to the other: and in suits against several, the chief question may be among the defendants: and in the case now pending the question was, whether a payment made by one, should go to his credit or to the credit of all: and by the laws of Louisiana, where the defendants may pray judgment against the plaintiff, a judgment may be rendered against one defendant, while the other defendant may have judgment against the plaintiff: in all these cases the defendants have a different and adverse interest, when there would be no motion to appeal, and when even their own interest might be compromitted. The party interested in reversing the judgment only will sue out a writ of error. The court cannot compel the other party to join, and justice could not be done if either party could defeat the other of their legal rights. The aggrieved party must be allowed to bring up the case, and if it is neces-

sary to comply with obsolete forms, the court must decree a severance.

But in this case all the parties are before the court. They had separate grounds of defence, the court below allowed them to sever in their answer: judgment was rendered against all in solido; and separately, for the whole amount against two of the defendants. They have both sued out a writ of error, so that the only motion here should be to consolidate. The parties have distinct grounds of error, and claim distinct remedies; but the judgment may be reversed in whole or in part; it may be good against one defendant, and erroneous as to the others.

The case of Williams v. Bank, in 11 Cranch, is not applicable, because Williams alone took up the case; but even then, I understand the court would have granted summons and severance.

The reason assigned for the English rule why all parties must join, is, that a writ of error suspends execution; which is not so here, where execution goes in all cases against all those who have not joined in the writ of error and given bond.

This must be a very important principle in practice, and ought to be settled. It is extraordinary that no such case has heretofore occurred.

The object must be to have a reasonable rule, a practicable and convenient rule, that will facilitate the administration of justice, that will advance the remedy by writ of error; and not one calculated to defeat or obstruct the course of the laws by objections, merely technical, as to the forms of proceeding.

It will be found more convenient to adapt our proceedings upon writ of error to the general practice of the state courts. They are more consonant to our system, a l better known to the bench and the bar.

The court overruled the motion to dismiss the writ of error. The case afterwards came on for argument.

For the plaintiffs in error, the following errors in the proceedings and judgment were assigned.

1. The judgment is void, because no judgment could be rendered against these parties under the general and indefinite description " of the legal representatives of Joseph H. Hawkins and John Dick." The citation was not legal or valid,

and the return does not state on whom service was made, and the truth of the return depends upon the marshal's knowledge of the legal representatives.

It may be said this is cured by the appearance of the parties, but J. and N. Dick deny that they are the only legal representatives, and the fact is admitted by the district attorney, that they are not.

2. The judgment is erroneous, because the court rejected legal evidence, to wit: "a transcript from the books of the treasury, duly authenticated, purporting to be a list of payments made and receipts taken and passed at the treasury of the United States," since the death of Hawkins, for seven thousand three hundred and seventeen dollars fifty-four cents; which deprived him of the means of showing that other credits, besides those stated in the transcript on which the suit was brought, had subsequently gone to their credit, or that the payments mad by Cox after the death of Hawkins ought to have gone to t e credit of the bond, or to his half of it, or of showing that the amount claimed in the petition was too large, and thereby supporting his plea that he owed only twelve thousand six hundred and eighty-two dollars forty-six cents, and not fifteen thousand five hundred and fifty-three dollars eighteen cents.

3. The judgment is erroneous because it is rendered for a larger sum than is demanded in the petition.

4. Because it is rendered, first, in solido against the securities, and second, it is rendered against J. and N. Dick, each, for ten thousand dollars, that is, after a judgment against the parties for the whole amount of the bond. There is also a judgment against two only of the legal representatives of J. Dick for an additional twenty thousand dollars: making in all forty thousand dollars, which is double the amount of the bond, and a much larger sum than is claimed to be due.

5. Because the judgment is vague and void from uncertainty, being rendered against "the estate of J. Dick and Nathaniel Cox, jointly and severally." Whereas the judgment ought to have been against the persons, in their individual character, who represent the estate of J. Dick.

6. Because the judgment, if rendered against the legal representatives of John Dick, ought to have been against all the

heirs *jointly*, and not against two of them, and not against them separately, and then only for an amount not exceeding the balance stated to be due to the government, and not exceeding the amount which they had received from the estate of John Dick; and the judgment ought to have stated that the money was to be levied of the property, real and personal, of the estate of John Dick, in their hands to be administered.

7. The judgment is void, because no execution could issue against the estate of John Dick, and none could be executed.

8. The judgment is erroneous, because while it appears by the petition and transcript, that only fifteen thousand five hundred and fifty-five dollars eighteen cents were due by Hawkins, the defendants have paid twelve thousand six hundred and eighty-two dollars forty-six cents, and there is still a judgment against them unsatisfied in solido for seven thousand three hundred and seventeen dollars fifty-four cents, and moreover against I. and N. Dick, for ten thousand dollars each, and does not follow the verdict, which is also void on its face, being for a larger sum than is demanded.

9. The judgment is erroneous, because there is judgment for costs, notwithstanding the plea of the Dicks, which has not been disproved, that no amicable demand was made for the money; the practice of Louisiana requiring that such a demand of a debt must be made before suit, or the plaintiff cannot recover costs.

10. The motion in arrest of judgment ought to have prevailed, because judgment ought not to have been rendered against two of the heirs, for although securities are jointly and severally bound, yet each and all of the heirs of either of the securities must contribute equally to the portion due by the person they represent, according to the proportion they receive from the estate.

11. The court erred in refusing the evidence of Hawkins's account as navy agent with the Bank of the United States. The money at his credit as navy agent, in the bank, if any, is the property of the United States, and ought to go to the credit of his account with the government, and the evidence ought to have been received for what it was worth.

The whole proceedings are extremely irregular, and the judgment erroneous, and ought to be reversed.

[Cox and Dick v. The United States.]

Mr Johnston read the errors assigned, and commented on each.

He would waive in the argument all the objections to the form of proceeding, and bring the question to the principal errors on which he hoped to reverse the judgment.

The suit was instituted upon a bond of twenty thousand dollars against the securities of Hawkins; by which they were bound to pay for him only so much as he was indebted to the government.

The petition states that Hawkins, at *the time of his death*, was indebted fifteen thousand five hundred and fifty-three dollars and eighteen cents, and consequently they were only bound for that sum, and no more. Yet a verdict has been rendered for twenty thousand dollars, and judgment has been entered for twenty thousand dollars against the parties, in solido; which being a larger sum than was demanded, and for a sum exceeding the balance stated by the treasury to be due, is erroneous upon the face of the record.

But Mr Cox, one of the securities, pleaded, that *since the death* of Hawkins, he had paid the sum of seven thousand three hundred and seventeen dollars and fifty-four cents, in vouchers taken in the name of Hawkins, which had been admitted at the treasury; and tendered the transcript from the department in support of his plea. This the court refused—to which a bill of exceptions was taken, which brings this point before this court.

The district court erred in this, because any payment made by either party, *since* the *death of* Hawkins, was clearly subsequent to the balance on which suit was brought, as stated in the petition.

It was, besides, legal evidence, and necessary to his plea. The party did not tender vouchers as the court seemed to suppose; but a *transcript* from the treasury of vouchers *admitted since the death of* Hawkins.

The court erred in this, also, in refusing the transcript. Cox pleaded that he was himself entitled to a credit for seven thousand three hundred and seventeen dollars and fifty-four cents; which he had paid as so much of his half of the bond; and prayed an apportionment with the co-security, and that each might contribute according to their respective shares.

He offered in evidence a certain transcript from the treasury books, duly certified, of certain payments made by Cox in diminution of the balance of Hawkins, since his death, and before the date of the transcript offered by the district attorney.

Mr Johnston argued, that this was a bond executed in Louisiana, and was governed by the laws of the place. That although the parties were bound in solido, it was only an eventual, not a positive responsibility. The principal is first bound by every legal and moral obligation, unless he is absent or insolvent, or his affairs greatly involved; and the securities have a right to demand a discussion of his property; and they are liable only when his property is exhausted. Then begins the responsibility of the sureties; and they are answerable in the first instance only for their proper proportion, unless in case of absence or insolvency; each has a right to pay, as Cox did here, the amount of his responsibility, and to remain bound only for the balance on the failure of the co-security.

The transcript ought to have been received as evidence to show a payment after the death of Hawkins; whether the credit was to go to Cox or all the securities. The evidence tendered was legal and proper, whatever legal consequences might follow.

The case was irregularly brought against the Dicks without stating their names, and in what way, whether as heirs, executors, or administrators, they were responsible. The Dicks were only two of three heirs; and as they had accepted the estate "with the benefit of an inventory;" they were liable only for the amount they had received. Yet the judgment is rendered against them in solido, as if they, the heirs, were jointly bound with Cox; and then judgment is rendered in addition against both the Dicks for ten thousand dollars each.

Mr Johnston contended the suit is improperly brought; the testimony was illegally rejected; the judgment is erroneous, being for more than was demanded; more than was due; being double, and not conformable to the verdict, and was itself void on the face of the record.

Mr Taney, attorney-general, stated, that the suit was brought on the bond of a navy agent, dated March 10, 1821, and taken

under the authority of acts of congress passed March 8, 1809, sect. 3, 4, 4th vol. Laws U. S. 221; May 15, 1820, sect. 3, 6th vol. Laws U. S. 519.

He contended that the United States were not bound to divide their action, and reduce their demand against Cox.

1. The securities being bound in solido with the principal, they are not, by the laws of Louisiana, entitled to a division of the action. Civil Code of Louisiana, 615, 616, art. 3014.

2. But if they were so entitled by the laws of Louisiana, yet this bond is to be interpreted according to the rules of the common law, and the obligations of the parties measured accordingly. Each security is bound for the whole by the very terms of his contract; and by the well established course of judicial proceedings, as known to the common law, either security may be sued on an instrument of this description, and judgment rendered for the whole.

Where the act of congress speaks " of a bond with one or more sufficient securities," it describes an instrument well known to the common law; which creates certain obligations on the one side, and gives certain rights and remedies on the other; and this bond being joint and several, the whole amount may be recovered from either. If the bond were joint only, suit against one could not be sustained by the principles of the common law without the other; but when you obtain judgment, you might levy the whole against either.

The meaning of the defence in this case is, that each surety is liable only for the one half, and that no more can be recovered from him.

The inconvenience and injustice of such an interpretation is evident. The law of congress intended the same contract and the same obligation wherever the obligors resided. It meant to require " a bond and security," not only in the form known to the common law, but in its substance and effect also. We must resort to the common law for the form of the contract directed by the laws of congress. If we are to look to it for the form, we must look to the same source for its substance and obligations.

The court were right in rejecting the transcript from the treasury as evidence for the purpose for which it was offered. The transcript was not offered to prove that Hawkins was en-

titled to these credits; the credits had been already allowed
to him at the treasury.    The exception states that the -pay-
ments were made and receipts taken in his name.    The evi-
dence was offered to show that Cox was entitled to those credits.

This question arises under the fourth section of the act of
congress of March 3, 1797, 2d vol. Laws U. S. 594, 595.

The words of the fourth section are general, and apply to all
suits against individuals.    Sect. 1 speaks of "revenue offi-
cers and other persons accountable for public money."    Sect. 2
speaks of cases of "*delinquency,*" where suits have been in-
stituted.    Sect. 3, of persons indebted to the United States
as aforesaid.    Sect. 4 embraces all suits against "*indivi-
duals.*" The fair construction of the second and third sections
would embrace suits against the sureties as well as the principal.
But the fourth section seems to be carefully worded, so as to
embrace suits against sureties, as well as principals.    United
States v. Giles and others, 9 Cranch, 236.

Upon the death of Hawkins, and before, and at the time of
his death, Cox was indebted to the United States in twenty
thousand dollars (the penalty of his bond), on account of the
*delinquency* of Hawkins.    His offer was to prove certain pay--
ments at the treasury, to discharge himself from a part of this
debt.   It was the claim of a *credit* to himself for the amount
of such payments.    He could not be allowed them, unless they
had been first offered and rejected by the proper accounting
officer.

To this it may be objected, that he could not prove them
disallowed, because they had been allowed.    But it is answer-
ed, that they had not been allowed to him in discharge of his
debt, but to Hawkins in discharge of a larger debt.   The alle-
gation is, that they were credited to Hawkins by mistake,
when they ought to have been credited to him.    It was his
duty, if he claimed the credit, to have the error corrected at
the treasury.    It would have been the common case of passing
to the credit of one man, by mistake, what properly belonged
to another.

The reason for requiring this application is obvious.    It is
the duty of the accounting officers to obtain information, and
to warn the district attorney of the grounds of the rejection.
It might have appeared that this money was paid out of the

[Cox and Dick v. The United States.]

funds of Hawkins.   The reason why it was credited to him, and not to Cox, would have been stated if he had applied at the treasury.

But there is even a stronger reason for requiring that Cox should have claimed this credit at the treasury.

The credits allowed to Hawkins's account cannot be altered by the accounting officer without the application of Hawkins's representatives, and proof of the mistake.   They remain there, therefore, to his credit.   Suppose his representatives are sued, would they not be entitled to these credits?   They would not be bound by the verdict in Cox's case, for they are not parties; they are returned non est inventus.   It is not only the requirement of law, therefore, but it is the dictate of justice, that Cox should furnish the accounting officer with the evidence of his claim to these credits; for otherwise, the United States may in the first instance be compelled to allow them to Cox, and afterwards to allow them again to Hawkins in the payment for the excess due beyond the penalty of the bond.

As matters now stand, if Cox obtains the verdict, and Hawkins's representatives are sued, they have nothing to do but demand a copy of the transcript, and they prove him entitled to the credit.   The transcript is made to prove for both.   If it proves Cox's claim, because they were entered after Hawkins's death, it will prove Hawkins's claim to them, because they are made in his name.   They may have been justly appended to Hawkins's credit if paid out of his funds; and if Cox is entitled to them, he ought to exhibit his proof to the accounting officer.

The refusal to admit the account with the bank in evidence, is justified by the reasoning on the preceding point.

The account of Hawkins with the bank could be no evidence against the United States.   If he had no funds there, that fact could be proved by the proper officer of the bank, but an account between him and the bank, could upon no principle be evidence against a third party.   But if his accounts were evidence against third parties, how could they be received to prove that Cox paid at the treasury the items in question out of his own funds?

The offer is not made in connexion with the offer of other evidence to prove that Hawkins was insolvent, and left no

[Cox and Dick v. The United States.]

property out of which his payment could have been made.
Nothing is offered but the transcript from the treasury and the
bank account; and standing by themselves, they cannot even
tend to prove that the payment was made by Cox, and could
not have been made out of Hawkins's funds.  If he had not
money to his credit as navy agent, in the bank, this is by no
means evidence that he had not, property or funds elsewhere,
out of which this debt, or these items might have been paid.

As to the motion in the district court in arrest of judgment,
by James and Nathaniel Dick, Mr Taney argued that this
point divided itself into two branches.

1.  That judgment must be arrested because the proper par-
ties are not before the court.  This proposition assumes that
there can be no judgment against any of the representatives of
Dick, unless all of them are before the court.

To this it is answered: 1. The law and practice of Louisiana
does not require it.   In the case of creditor, and principal and
securities debtors, creditor may include all in one suit, or he
may not.   Civil Code, 616, 617, art. 3018, 3019, 3020.

It is the same principle in cases of succession or representa-
tion of heirs.   The demand is separate for his proportion.
Civil Code, 327, art. 1376, 1377.

Moreover, upon a mere point of practice, the decision of
the court will be presumed to be right; and it is incumbent on
the plaintiffs in error to show the law, or the decision, which
proves them to be wrong.

2.  If by the practice of the Louisiana courts it was necessary
to make all the heirs parties, yet it would be otherwise in the
courts of the United States.   The act of congress of May 26,
1824, 7th vol. Laws U. S. 315, was not intended to allow a
practice that would produce a discrepancy with an act of con-
gress.   The court could alter the practice by rule in any case;
and in ordinary cases, evidence of the rule making the altera-
tion would be required.   But where the practice of the state
would produce a discrepancy with a law of congress, no rule
was necessary: it became the duty of the judge to reject the
practice.   In other words, the act of 1824 excludes all such
practice and proceedings in the state courts as do not harmo-
nise with the laws of congress.

[Cox and Dick v. The United States.]

If, therefore, a practice in the state courts requiring all the heirs of a deceased debtor to be made parties in a suit by the creditor would be inconsistent with any rule of proceeding established by the laws of congress, such practice was not introduced, and was not intended to be introduced by the act of 1824.

A practice which required all the heirs of a deceased debtor to be made parties in a suit by the creditor, would be inconsistent with the laws of the United States; and if the state practice required Mrs Todd to be made a defendant in this case, it would occasion a discrepancy with the laws of the United States.

This is not a proceeding *in rem*, but a personal action against the heirs of John Dick, to charge them by reason of the property they have inherited from him. Civil Code, 326, art. 1370.

Moreover, it is not suggested that Mrs Todd's share of the succession, or any other property belonging to her was in the eastern district of Louisiana.

But the situation of any property belonging to her would not be material to this question. In the answer of Cox, she is stated to be the wife of J. Todd, of the state of Virginia. In the suggestion of the district attorney, she is stated to *reside out of the district*, to wit, in the state of Virginia; and in the motion in arrest of judgment, the suggestion of the district attorney is adopted, and made the foundation of the motion.

It is no where suggested that she was then within the district.

The act of congress of 1789, ch. 20, sect. 11, declares, "and no civil suit shall be brought before either of the said courts, against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." Mrs Todd, therefore, could not be made a party in this suit. The court had no jurisdiction in a personal action against her. And if in a suit against the other representatives, she is a necessary party, then the United States cannot sustain a suit any where for this claim. They cannot sue Mrs Todd

in Louisiana, and they cannot sue Nathaniel and James Dick in Virginia. Craig v. Cummings, 1 Peters's C. C. Rep. 431, note.

As to the objection, that the judgment cannot be for the whole amount against two out of the three heirs, Mr Taney argued:

The only defendants in the case were Cox and the two Dicks. The verdict is a general one for plaintiffs for $20,000. The judgment necessarily followed the verdict, and even formed it. The court could not, on that verdict, have given judgment against the Dicks for two-thirds of the sum due. The jury found the whole sum due jointly from the defendants, and the judgment necessarily followed it, unless the verdict was set aside. The verdict was conclusive.

The defendants might have made the objection before verdict, and if the court overruled it, have taken an exception: and then the opinion of the court could be resisted on the writ of error. And if the court gave the direction, and the jury disregarded it, the court could have granted a new trial. The error complained of is in the verdict, and not in the judgment. It is one of fact, and not of law, and cannot be reviewed here on writ of error. Parsons v. Armor, 3 Peters, 425. Parsons v. Bedford, 3 Peters, 445, 449. Upon the authority of these cases, it seems clear, that as there is no exception to an opinion before the verdict, the verdict was conclusive, unless set aside on a motion for a new trial.

As to the objection that the representatives of Hawkins and of Dick are not named, it was considered that Hawkins's representatives are not parties here, and were not parties below. They are not named, and have not appeared. The appearance of Nathaniel and James Dick, and their answer, waves the omission to name them. They answer, and state who are the representatives of John Dick. A party may voluntarily appear without process against him.

It is said there was no amicable demand.

1. There is no necessity for an amicable demand by the United States. It was the duty of the debtors to settle and pay; and if they did not, it was the duty of the officers to sue.

The practice of Louisiana cannot alter the law of congress.

[Cox and Dick v. The United States.]

2. The amicable demand, if necessary, was a fact; and is disposed of by the verdict.

The plaintiffs in error, Nathaniel and James Dick, state that they have received but four thousand dollars of the succession of John Dick. This also is disposed of by the verdict. There is no opinion given by the court on this point, and no exception on the subject.

The judgment is said to be erroneous, because of its form.

The form of the judgment depends on the practice in that state. It is not a judgment in the first instance against Nathaniel and James Dick, but against the estate of John Dick; and the latter part seems to be explanatory of the first. If it stood on the first clause, Mrs Todd would be embraced in it, as she had succeeded to a part of the estate. The second clause seems to have been introduced to show that the judgment was against the two defendants in court.

The form is unlike a common law judgment, but in a mere matter of form in a proceeding so unlike those known to a court of common law, this court would require clear authority to show it was erroneous before they reversed it.

It was evidently intended to follow the verdict and contract.

Mr Johnston, in reply, stated, that the ground of defence taken by the learned attorney of the government, was one of great interest to the state of Louisiana.

It is, that the bonds executed in that state by the inhabitants of that state, to the government, are not governed by the laws of that state; but by the common law.

To the admission of this principle, which must affect all the relations of all the citizens of Louisiana to the government, and entirely change the nature of their obligation and responsibility upon all bonds to the government, he felt it his duty to protest.

The government required a bond; but they have no law regulating the form and the extent of the obligation of the bond. They have no common law of the United States, and the court has no power to adopt any system. They have therefore no law, of binding force upon the court. But in this case, the court must apply the general rule, applicable to all human affairs; that the contract shall be governed by the law

of the place, the only law known to the parties. Then the court have a guide, and the citizens a law.

No injury will result, as the laws of all the states conform to the common law, except those of the state of Louisiana, which are founded on the principles of the civil law. Why should not the people of that state have the benefit of their laws, unless some material injury will result? The laws are quite as good for the enforcement of the contract, and the security of the government, and much more just and beneficent, than the severe and inflexible rules of the common law.

This case beautifully illustrates the difference in principle that runs through the two systems.

The one contains a set of rigid principles, that makes the hard enforcement of the contract its main object. The other is paternal, it aims at justice, but mild and mitigated justice.

The one seems made only for the creditor, and to be utterly regardless of the rights or feelings of the debtors; it confers the power upon the creditor of forcing the payment, from any and all the parties, without the slightest regard to the justice of the case among the co-obligors.

The other looks to all the rights of all the parties; how the claims of the creditor may be enforced without injurious delay and without a multiplicity of actions, and how the debtors shall respond according to the principles of moral obligation existing between them.

By the common law the creditor demands his bond; he claims judgment equally against the principal, who has contracted the debt, and against the innocent securities who are to be made responsible for him. He selects among them, and chooses whom he will pursue, and whom he will sacrifice. The law places all the parties equally in his grasp; he may, in the wantonness of power, while he saves one from motives of favour or caprice, select his victim, pursue him to judgment, seize and sell and sacrifice his property; and then the ruined man is turned over to his remedy against the other party by a due course of law.

The bond was not made merely for the government or the inexorable creditor; but it contains legal as well as moral obligations, between the principal and the security, and among the securities themselves.

[Cox and Dick v. The United States.]

Although all the defendants are liable, they are not upon moral and equitable principles equally bound to pay: the principal is first bound to pay by duty and honour; and there is strict propriety, while judgment is taken against all, that his property should be first discussed and exhausted, and when that fails, recourse must be had to the securities; and here takes place a law between them, by which each is bound to pay equally his proportion of the common loss, and then if either fail, the other is responsible to the creditor for him.

Here is a spirit of equity running through the whole of this judicial transaction, which strikes the common sense of mankind. The other conforms to the severe and rigorous principles of that system which declares " fiat justicia, ruit coelum:" that is, enforce the law, and administer justice for the creditor according to its stern decrees, if you ruin every party who invokes its protection. Justice is equally done to the creditor in both cases, but how differently; in one case it works injustice and does irreparable injury, and often brings ruin to the parties.

It is not extraordinary, therefore, that we should claim the benefit of our equal laws, whose spirit we feel and whose principles we understand; and that we should deprecate the harsh and rigorous rules of the common law.

By the civil law, the creditor obtains his judgment against all the parties, which binds their property; but execution runs against them in the order of responsibility and according to the principles of justice, unless in case of absence, insolvency or involvement.

The common law obliges one party to pay for the rest at the discretion of the creditor at any sacrifice; and then gives rise to other suits, with great expense, delay, and loss among the parties.

So, also, by the equitable principles of the civil law, either party may pay in advance his proportion, or any part of it, and he shall have credit upon any claim against him. Here Mr Cox, knowing that in consequence of the insolvency of Hawkins he would be answerable for at least half of the bond, made payments to the government, for which he was entitled to credit as among the co-securities; but the court refused to allow him to produce the transcript, either to prove the payment for

himself, or as a general credit for the benefit of all the defendants.

If the absence of all law in the United States upon the subject, and the necessity of a rule, do not oblige the court to adopt the general law, to wit, the lex loci, which appears so much in harmony with our system, and they are free to adopt any code; the civil law recommends itself by its superior equity. But why should the court adopt the common law, which congress have not dared to do, and which congress cannot do by a declaratory law. It is, in the case of bonds, harsh, severe and unjust? If left without any law, what necessity is there for the application of any legal principles but the common sense and legal discretion of the court?

The bond requires no form, but merely to express in simple language the nature of the obligation. The signing and the delivery, which has given rise to so much contestation, is a question of fact to be ascertained by proof and decided by a jury; it is not a question of law, it depends upon circumstances and adjudged cases, even in England. And as to the seal, of what importance in this age is the wax or the impression; it is not required by act of congress, it proves nothing, it may be the seal of any other person, or of no person; and yet if the courts adopt the common law, a bond, no matter how solemnly expressed, subscribed and delivered, is of no validity unless it has the authority of the wax?

When the court come to the bond itself, it expresses in clear and intelligible language, that the parties have bound themselves to pay for the principal if he fails; and common justice and common sense would require that each should pay his just proportion. It does not seem that any particular law is necessary to enable the court to render judgment in such a case—much less the common law; and if there is no necessity, how unjust to adopt a foreign law to govern contracts in Louisiana, to create liabilities, unknown to the laws and the people, which are not necessary for the security of the government!

All the other states have the benefit of their laws in such cases: why should Louisiana present the singular anomaly of a foreign law, introduced not by the legislative power but by judicial construction?

The court have determined to adopt the judicial exposition

·of the laws of the states by the state tribunals, in order to introduce a general conformity and harmony between the two systems. Why not extend the principle so as to obtain a perfect adaptation to the laws of the states, and a general uniformity?

There is, besides, an additional reason for adopting the laws of the state, and that is, that although John Dick was bound by the common law, in solido, yet his representatives are only bound to contribute, according to the laws of Louisiana; that is, that each should be responsible only for the sum he received as heir, and not for the sum due by John Dick, or for the share of any of his heirs. Here the obligation of the bond must conform to the law of distribution of Louisiana.

Mr Johnston said, however important this principle might be as a general rule to the people of the state, he did not consider it important to the decision of this case. He relied upon the fact as stated, that Hawkins owed at *the time of his death* only fifteen thousand five hundred and fifty-three dollars and eighteen cents; that the court refused a transcript from the treasury, which is full evidence, showing payments made since his death; and that the judgment is contrary to the evidence and the law.

So stands the case upon the record; but he had no objection to assent to the statement made of the facts by the attorney-general.

When Hawkins died, he was indebted to the government twenty-two thousand eight hundred and seventy dollars and seventy-two cents. He was insolvent, and the securities knew they were responsible for twenty thousand dollars; and as both were officers of the government, and desired not to be sued, Cox proceeded to pay seven thousand three hundred and seventeen dollars and fifty-four cents in claims upon the government, and took the vouchers in the name of Hawkins, but dated subsequent to his death; he forwarded the vouchers to the proper accounting officer to be credited to his part of the bond; he did this in perfect good faith and confidence. The officer handed the vouchers to a clerk, who placed them to the credit of Hawkins's account instead of opening an account with the securities, and placing this as so much paid by Cox. Mr Dick, judge of the United States court, died soon after, before he had paid his proportion.

This payment would have left twelve thousand six hundred and eighty-two dollars and forty-six cents, instead of fifteen thousand five hundred and fifty-three dollars and eighteen cents; and since the judgment, the heirs of Dick have paid ten thousand dollars, and Cox has paid two thousand six hundred and eighty-two dollars and forty-six cents, making in all twenty thousand dollars, paid to the government on this bond by the securities.

Now the government has a judgment against them jointly for twenty thousand dollars, upon which they have since paid twelve thousand six hundred and eighty-two dollars and forty-six cents, leaving them seven thousand three hundred and seventeen dollars and fifty-four cents in debt: and they have a judgment against the Dicks separately for ten thousand dollars each, while it has been fully and fairly paid; and while it appears by the record that only fifteen thousand five hundred and fifty-three dollars and eighteen cents were demanded, and that twelve thousand six hundred and eighty-two dollars and forty-six cents have been paid since the rendition of the judgment, and the balance paid before the suit brought.

Mr Justice Thompson delivered the opinion of the Court.

This cause comes up by writ of error from the district court of Louisiana district. The suit was instituted according to the practice of that court by petition, which states that Joseph H. Hawkins, late of New Orleans, navy agent of the United States, now deceased, John Dick, late of the same place, deceased, and Nathaniel Cox, of the same place, on the 10th day of March 1821, by their bond, became jointly and severally bound to the United States in the penalty of twenty thousand dollars. To which obligation a condition was annexed, by which it was provided, that if the said Joseph H. Hawkins shall regularly account, when thereunto required, for all public moneys received by him from time to time, and for all public property committed to his care, with such person or persons, officer or officers of the government of the United States, as shall be duly authorised to settle and adjust his accounts, and shall pay over, as he may be directed, any sum or sums that may be found due to the United States upon any such settlement, and shall faithfully discharge in every respect

[Cox and Dick v. The United States.]

the trust reposed in him, then the obligation to be void, other-- wise to remain in full force and virtue: and the petition further states, that the said Hawkins did not account for all public moneys received by him, and did not pay over the sums due from him to the United States; but at his death·remained indebted to the United States in the sum of fifteen thousand five hundred and fifty-three dollars and eighteen cents, for moneys received by him from the United States since the date of the said bond, as navy agent: by reason-whereof, the condition of the said bond had become broken, and the said debt become due; and prayed process of summons against the legal repre- sentatives of Hawkins and Dick, deceased, and against Na- thaniel Cox, and that judgment may be rendered against them for the said debt with interest and cost. A copy of the bond, duly authenticated, is annexed to the petition; and citations were issued against the legal representatives of J. H. Haw- kins, deceased, and of John Dick, deceased (without naming or designating them in any other manner), and against Na- thaniel Cox.

As to the representatives of Hawkins, the citation was re- turned not found; and as to the representatives of John Dick, it was returned served, and the like return as to Cox.

Cox appeared and answered, denying that the sum of fifteen thousand-five hundred and fifty-three dollars and eigh- teen cents is due from the sureties, as stated in the petition; alleging that he has paid, since the decease of Hawkins, seven thousand three hundred and seventeen dollars and fifty- four cents, which had been allowed at the treasury of the United States; leaving a balance only of eight thousand two hundred and thirty-five dollars and sixty-four cents. And, according to the course of practice in Louisiana, he represents that the succession of his co-surety John Dick, is solvent; and demands that the United States divide their action, by re- ducing their demand to the amount of the share and propor- tion due by each surety, which was overruled by the court.

Nathaniel Dick and James Dick appear and answer, that they are two of three heirs of John Dick, and in no event bound for more than two thirds of any debt of John Dick, and deny that the debt is in any manner due by the estate of John Dick: but should the same be proved, they say they have re-

ceived no more than four thousand dollars of the estate of John Dick, and are liable for no more than two thousand dollars each, and pray judgment and trial by jury. The cause was tried by a jury, and a general verdict for twenty thousand dollars found for the plaintiffs, being the amount of the penalty in the bond. Upon which the court gave judgment against the estate of John Dick and Nathaniel Cox, jointly and severally, for the sum of twenty thousand dollars, with six per cent interest from the 2d day of January 1830, until paid; and also gave judgment against Nathaniel Dick and James Dick, for the sum of ten thousand dollars each, with interest, &c.

In the course of the trial, a bill of exceptions was taken to the opinion of the court, in rejecting evidence offered on the part of Cox in support of his answer, setting up the payment of seven thousand three hundred and seventeen dollars and fifty-four cents, made by him after the death of Hawkins.

It is deemed unnecessary to notice the numerous and palpable errors contained in this record: that which arises from the entry of the judgment is insuperable. It is difficult to conceive, unless through mistake, how such a judgment could be entered. The demand in the petition is only fifteen thousand five hundred and fifty-three dollars and eighteen cents. The verdict of the jury is twenty thousand dollars; and upon this a judgment is entered up against the estate of John Dick and Nathaniel Cox jointly and severally for twenty-thousand dollars, and a judgment also against Nathaniel Dick and James Dick, for ten thousand dollars each. Upon no possible grounds, therefore, can this judgment be sustained.

There are, however, one or two questions arising upon this record. which have been supposed at the bar to have a more general bearing, which it may be proper briefly to notice.

Upon the trial, the defendant N. Cox offered in evidence a transcript from the books of the treasury, duly authenticated, purporting to be a list of payments made, and receipts taken and passed at the treasury of the United States, in the name of Joseph H. Hawkins, since the 3d of September 1823; it having been previously shown that Hawkins died on the 1st day of October of that year. This evidence was offered in support of the allegation in Cox's answer, that he had paid seven thou

[Cox and Dick v. The United States.]

sand three hundred and seventeen dollars and fifty-four cents since the decease of Hawkins in his capacity of surety. This testimony was objected to by the attorney of the United States on the ground that no credits could be allowed, but such as had been presented at the treasury and refused. The objection was sustained by the court, and the evidence rejected.

This was supposed in the court below, to come within the act of congress, 2d vol. Laws U. S. 595, which declares that in suits between the United States and individuals, no claim for a credit shall be admitted upon the trial (except under certain specified circumstances, not applicable to this case), but such as shall appear to have been presented to the accounting officers of the treasury for their examination, and by them disallowed.

This transcript is not set out in the record, and we can only judge of it from what is stated in the bill of exceptions; and from this it does not appear to be a case coming at all within the act of congress. It was not offered as evidence of any new claim for a credit which had not been presented to the accounting officers of the treasury. All the credits claimed had been given at the treasury; and the only purpose for which it was offered, was to show that such credits were given after the death of Hawkins; and although standing in his name, the payments could not have been made by him; and to let in evidence to show that they were in fact made by the surety. There is no evidence in the cause showing the course of keeping the accounts at the treasury in such cases. But it is believed that new accounts are never opened with the sureties. The accounting officers have no means of deciding whether the money is paid out of the funds of the sureties, or out of those of the principal. That is a question entirely between the sureties and the representatives of the principal. If application had been made at the treasury, and the accounting officers had transferred the payments, and given credit to Cox instead of Hawkins, it would not have changed the state of the case as between the United States and the parties in the bond; and as between the sureties themselves, it would have decided nothing, even if that was an inquiry that could have been gone into upon this trial. But nothing done at the treasury, which did not fall within the scope of the authority of the accounting officers in settling accounts, could have been received in evi-

dence. In the case of the United States v. Buford, 3 Peters, 29, it was held by this court, that an account stated at the treasury department, which does not arise in the ordinary mode of doing business in that department, can derive no additional validity from being certified under the act of congress. Such statements at the treasury can only be regarded as establishing items for moneys disbursed, through the ordinary channels of the department, when the transactions are shown by its books. If then the accounting officers of the treasury could have done nothing more than had already been done by giving credit on Hawkins's account for payments alleged to have been made by Cox after his death, whence the necessity of making any application to the treasury? It would have been a nugatory act; and the law surely ought not to be so construed as to require of a party a mere idle ceremony. The law was intended for real and substantial purposes; that the United States should not be surprised by claims for credits, which they might not be able to meet and explain in the hurry of a trial. But as no new credit was asked in this case, it would have been useless to make any application to the treasury for the mere purpose of being refused.

The evidence offered of Hawkins's account, as navy agent, with the branch bank at New Orleans was properly rejected. It was not competent evidence in this cause in any point of view, unless it was to show that there was a balance in favour of Hawkins, which ought to go to the credit of his account with the government. But for this purpose it was not admissible; it not having been presented to the accounting officers of the treasury for allowance. This was setting up a claim for a new credit, and could not be received according to the express provisions of the act of congress.

The proceedings in this cause, and the manner in which the judgment is entered, have been considered at the bar as affording a proper occasion for the court to decide whether this contract, and the liability of the parties thereupon, are to be governed by the rules of the civil law which prevail in Louisiana, or by the common law which prevails here.

It was contended on the part of the plaintiffs in error, that the United States were bound to divide their action, and take judgment against each surety only, for his proportion of the

sum due, according to the law of Louisiana; considering it a contract made there, and to be governed in this respect by the law of the state.

On the part of the United States it is claimed that the liability of the sureties must be governed by the rules of the common law; and the bond being joint and several, each is bound for the whole; and that the contribution between the co-sureties is a matter with which the United States have no concern.

The general rule on this subject is well settled; that the law of the place where the contract is made, and not where the action is brought, is to govern in expounding and enforcing the contract, unless the parties have a view to its being executed elsewhere; in which case it is to be governed according to the law of the place where it is to be executed.  2 Burr. 1077; 4 Term, 182; 7 Term, 242; 2 Johns. 241; 4 Johns. 285.

There is nothing appearing on the face of this bond indicating the place of its execution, nor is there any evidence in the case showing that fact.  In the absence of all proof on that point, it being an official bond taken in pursuance of an act of congress, it might well be assumed as having been executed at the seat of government.  But it is most likely that in point of fact, for the convenience of parties, the bond was executed at New Orleans, particularly as the sufficiency of the sureties is approved by the district attorney of Louisiana.

But admitting the bond to have been signed at New Orleans, it is very clear that the obligations imposed upon the parties thereby looked for its execution to the city of Washington  It is immaterial where the services as navy agent were  be performed by Hawkins.  His accountability for non-performance was to be at the seat of government.  He was bound to account, and the sureties undertook that he should account for all public moneys received by him, with such officers of the government of the United States as are duly authorised to settle and adjust his accounts.  The bond is given with reference to the laws of the United States on that subject.  And such accounting is required to be with the treasury department at the seat of government; and the navy agent is bound by the very terms of the bond to pay over such sum as may be found due to the United States on such settle-

ment; and such paying over must be to the treasury department, or in such manner as shall be directed by the secretary. The bond is, therefore, in every point of view in which it can be considered, a contract to be executed at the city of Washington; and the liability of the parties must be governed by the rules of the common law.

The judgment of the court below is reversed; and the cause sent back with directions to issue a venire de novo.

This cause came on to be heard on the transcript of the record from the district court of the United States for the district of East Louisiana, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this court, that the judgment of the said district court in this cause be, and the same is hereby reversed, and that this cause be, and the same is hereby remanded to the said district court, with directions to award a venire facias de novo.