By the Court, Nelson, Ch. J.
The principal ground of the demurrer is, that the bond set out in the declaration, and upon which the action is founded, appears to have been given to secure the payment of money to be raised and distributed by a lottery, contrary to the laws of this state, and against good morals ; and further, that it appears from the declaration that the bond was executed in New-York.
The defendants not having craved oyer of the bond, we cannot regard the copy set forth as any part of the plead *529 ings for the purpose of deciding the question raised,(a) but must look solely to the declaration; and then, I apprehend, it will be difficult to maintain, as matter of fact, that the bond was executed in this state. On the contrary, I think the presumption would be that it was executed in' the state of Kentucky, where beyond all question it would be upheld as a legal and valid obligation.
But whether the bond was executed in New-York or Kentucky cannot I think vary or affect the determination of the question. For it is manifest that the performance of the several stipulations on the part of the defendants, provided for by the condition, was to take place in Kentucky, in which case the rule respecting the construction and effect of the instrument is the same as if it had been made in that state. (Andrews v. Herriot, 4 Cowen, 508, 511, note (a); Story On Confl. of Laws, 233.) That these stipulations were to be performed in Kentucky, is too plain for argument, especially when the provisions of the-statute establishing and regulating the lottery are viewed in connection with the condition of the bond. The object of the condition was to secure a compliance with the requisitions of the statute in the state where the lottery was established. If any authority were necessary on this point, I might refer to the cases of Cox v. The United States, (6 Peters, 172,) and Duncan's heirs v. The United States, (7 id. 435,) which are decisive.
True, as foreign laws are of no efficacy here ex proprio vigore, but by comity only, our courts may and-ought to determine in each case how far that comity shall extend. If the law sanction what is plainly contrary to morality, the public rights &c., the courts of this state -will not aid in administering it. (Story On Confl. of Laws, 213, § 258.) But I do not regard the one in question as falling within this class of excepted cases; any more than a foreign law allowing interest on money beyond the rate established by our own statute. (Andrews v. *530 Pond, 13 Peters’ Rep. 65.) Indeed, the policy of raising money by lottery for public purposes, such as for literary and benevolent institutions, continued. to prevail in this state until 1833, (Sess. Laws of 1833, p. 484,) though before prohibited as unwise and inexpedient in the constitution of 1821, so far as respected the future power of the legislature. (Const, of N. Y. Art. 7, § 11.) It would be rather ungracious for our courts, under these circumstances, to refuse to uphold the contract in question, within the rule of comity, on the ground that it was founded in moral turpitude.
Judgment for the plaintiff.

 See Rockefeller v. Hoysradt, (2 Hill, 616.)