## PRITCHARD *v.* NORTON.

A. and B. executed and delivered to C., in New York, a bond of indemnity, conditioned to hold harmless and fully indemnify him against all loss or damage arising from his liability on an appeal bond, which he had signed in Louisiana as surety on behalf of a certain railroad company, defendant in a judgment rendered against it in the courts of the latter State, and which, being affirmed, he was compelled to pay. By the law of New York, any written instrument, although under seal, was subject to impeachment for want of consideration ; and a pre-existing liability, entered into without request, which was the sole consideration of that bond of indemnity, was insufficient. It was otherwise in Louisiana. A suit on the bond was brought in Louisiana. *Held*, 1. That the question of the validity of the bond, as dependent upon the sufficiency of its consideration, is not a matter of procedure and remedy, to be governed by the *lex fori*, but belongs to the substance of the contract, and must be determined by the law of the seat of the obligation. 2. In every forum a contract is governed by the law with a view to which it is made, because, by the consent of the parties, that law becomes a part of their agreement ; and it is, therefore, to be presumed, in the absence of any express declaration or controlling circumstances to the contrary, that the parties had in contemplation a law according to which their contract would be upheld, rather than one by which it would be defeated. 3. The obligation of the bond of indemnity was either to place funds in the hands of the obligee, wherewith to discharge his liability when it became fixed by judgment, or to refund to him his necessary advances in discharging it, in the place where his liability was legally solvable ; and as this obligation could only be fulfilled in Louisiana, it must be governed by the law of that State as the *lex loci solutionis*.

ERROR to the Circuit Court of the United States for the District of Louisiana.

This action was brought by Eliza D. Pritchard, a citizen of Louisiana, executrix of Richard Pritchard, deceased, against Norton, a citizen of New York, in the court below, upon a writing obligatory, of which the following is a copy : —

" STATE OF NEW YORK,
    ." *County of New York.*

"Know all men by these presents, that we, Henry S. McComb, of Wilmington, State of Delaware, and Ex Norton, of the city of New York, State of New York, are held and firmly bound, jointly and severally, unto Richard Pritchard, of New Orleans, his executors, administrators, and assigns, in the sum of fifty-five thousand ($55,000) dollars, lawful money of the United States, for the payment whereof we bind ourselves, our heirs, executors, and administrators firmly by these presents. Sealed with our seals and dated

this thirtieth day of June, A. D. eighteen hundred and seventy-four.

"Whereas the aforesaid Richard Pritchard has signed an appeal bond as one of the sureties thereon, jointly and severally, on behalf of the defendant, appellant in the suit of J. P. Harrison, Jr. v. The New Orleans, Jackson, and Great Northern Railroad Co., No. 9261 on the docket of the Seventh District Court for the Parish of Orleans:

"Now, the condition of the above obligation is such that if the aforesaid obligors shall hold harmless and fully indemnify the said Richard Pritchard against all loss or damage arising from his liability as surety on the said appeal bond, then this obligation shall be null and void; otherwise, shall remain in full force and effect.

"H. S. McCOMB.     [L. S.]
"Ex NORTON.        [L. S.]"

The appeal bond mentioned in the bond was executed.

A judgment was rendered on that appeal in the Supreme Court of Louisiana, May 30, 1876, against the railroad company, in satisfaction of which Pritchard became liable to pay, and did pay, the amount, to recover which this action was brought against Norton. The condition of this appeal bond was that the company "shall prosecute its said appeal, and shall satisfy whatever judgment may be rendered against it, or that the same shall be satisfied by the proceeds of the sale of its estate, real or personal, if it be cast in the appeal; otherwise that the said Pritchard et al., sureties, shall be liable in its place."

The defendant set up, by way of defence, that the bond sued on was executed and delivered by him to Pritchard in the State of New York, and without any consideration therefor, and that by the laws of that State it was void, by reason thereof.

There was evidence on the trial tending to prove that the appeal bond was not signed by Pritchard at the instance or request of McComb or Norton, and that there was no consideration for their signing and executing the bond of indemnity passing at the time, and that the latter was executed and delivered in New York. There was also put in evidence the following provisions of the Revised Statutes of that State, 2 Rev. Stat. 406: —

"SECT. 77. In every action upon a sealed instrument, and when a set-off is founded upon any sealed instrument, the seal thereof shall only be presumptive evidence of a sufficient consideration, which may be rebutted in the same manner and to the same extent as if the instrument were not sealed.

"SECT. 78. The defence allowed by the last section shall not be made unless the defendant shall have pleaded the same, or shall have given notice thereof at the time of pleading the general issue, or some other plea denying the contract on which the action is brought."

At the request of the defendant the Circuit Court charged the jury that the indemnifying bond, in respect to its validity and the consideration requisite to support it, was to be governed by the law of New York, and not of Louisiana; and that if they believed from the evidence that the appeal bond signed by Richard Pritchard as surety was not signed by him at the instance or request of McComb and Norton, or either of them, and that no consideration passed between Pritchard and McComb and Norton for the signing and execution of the indemnifying bond by them, then that the bond was void for want and absence of any consideration valid in law to sustain it, and no recovery could be had upon it.

The plaintiff requested the court to charge the jury that if they found from the evidence that the consideration for the indemnifying bond was the obligation contracted by Pritchard as surety on the appeal bond, and that the object of the indemnifying bond was to hold harmless and indemnify Pritchard from loss or damage by reason of or growing out of said appeal bond, then that the consideration for said indemnifying bond was good and valid, and is competent to support the action upon the bond for the recovery of any such loss or damage sustained by Pritchard. This request the court refused. Exceptions were duly taken to these rulings, which the plaintiff now assigns for error, there having been a judgment for the defendant, which she seeks to reverse.

*Mr. Cephas Brainerd* and *Mr. George H. Bates* in support of the judgment below.

As the bond was executed and delivered in New York, by a resident of that State, and no place of payment is specified in

it, all questions which relate to its construction, validity, and effect must be determined by the law of New York. Story, Contracts, sect. 653; Parsons, Contracts (5th ed.), vol. ii. pp. 570, 571; Addison, Contracts, 861; Story, Conflict of Laws (4th ed.), sect. 242; Wharton, Conflict of Laws (2d ed.), sect. 454, and cases cited; Phill. Int. Law, vol. iv. p. 616; Savigny (Guthrie's 2d ed.), 205, 227, 229; *Scudder* v. *Union National Bank*, 91 U. S. 406; *King* v. *Harman's Heirs*, 6 La. 607.

Even when a contract is by its terms to be performed partly in one State and partly in another, it has been held proper to construe it according to the law of the place where it was made. *Morgan* v. *N. O., M., & T. Railroad Co.*, 2 Woods, 244.

Indeed, it is the undisputed rule that the domicile of the debtor supplies the local law applicable to a contract, except where it *definitely* fixes the place of performance; or where the obligation arises in connection with a continuous business; or where the debtor executes a contract at a place detached from his domicile, under such circumstances as lead to the inference that in such place it is to be performed. Wharton, Conflict of Laws (2d ed.), sect. 426.

None of these exceptions are applicable to the present case, and it therefore falls under the general rule.

The contention of the plaintiff rests upon the assumption that, because the contract was to indemnify Pritchard against loss as a surety upon a bond executed in Louisiana, where he lived, and where, by reason of the affirmance of the judgment mentioned in the bond, his liability was ultimately determined, that State is therefore the place of performance, to such an extent as that the obligations and rights of the respective parties to the instrument on which this action is brought are to be measured by her laws. No authority can, it is believed, be cited in conflict with the doctrine that, where no place of payment is nominated in a bond of indemnity, — a bond which is neither more nor less than a contract for the payment of a sum of money in a certain contingency, — the *lex loci contractus* applies, and not the law governing the contract of the person whom the obligor engages to indemnify.

Counsel then contended that, by the law of New York, the bond sued on is, in view of the undisputed facts of the case, void for want of consideration.

*Mr. Henry C. Miller, contra.*

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

It is claimed on behalf of the plaintiff that by the law of Louisiana the pre-existing liability of Pritchard as surety for the railroad company would be a valid consideration to support the promise of indemnity, notwithstanding his liability had been incurred without any previous request from the defend-ant. This claim is not controverted, and is fully supported by the citations from the Civil Code of Louisiana of 1870, art. 1893–1960, and the decisions of the Supreme Court of that State. *Flood* v. *Thomas*, 5 Mart. N. s. (La.) 560; *N. O. Gas Co.* v. *Paulding*, 12 Rob. (La.) 378; *N. O. & Carrollton Railroad Co.* v. *Chapman*, 8 La. Ann. 97; *Keane* v. *Goldsmith, Haber, & Co.*, 12 id. 560. In the case last mentioned it is said that "the contract is, in its nature, one of personal warranty, recognized by articles 378 and 379 of the Code of Practice." And it was there held that a right of action upon the bond of indemnity accrued to the obligee, when his liability became fixed as surety by a final judgment, without payment on his part, it being the obligation of the defendants upon the bond of indemnity to pay the judgment rendered against him, or to furnish him the money with which to pay it.

The single question presented by the record, therefore, is whether the law of New York or that of Louisiana defines and fixes the rights and obligations of the parties. If the former applies, the judgment of the court below is correct; if the latter, it is erroneous.

The argument in support of the judgment is simple, and may be briefly stated. It is, that New York is the place of the contract, both because it was executed and delivered there, and because no other place of performance being either designated or necessarily implied, it was to be performed there; wherefore the law of New York, as the *lex loci contractus*, in both senses, being *lex loci celebrationis* and *lex loci solutionis*,

must apply to determine not only the form of the contract, but also its validity.

On the other hand, the application of the law of Louisiana may be considered in two aspects : as the *lex fori*, the suit having been brought in a court exercising jurisdiction within its territory and administering its laws; and as the *lex loci solutionis*, the obligation of the bond of indemnity being to place the fund for payment in the hands of the surety, or to repay him the amount of his advance, in the place where he was bound to discharge his own liability.

It will be convenient to consider the applicability of the law of Louisiana, first, as the *lex fori*, and then as the *lex loci solutionis*.

1. The *lex fori*.

The court below, in a cause like the present, in which its jurisdiction depends on the citizenship of the parties, adjudicates their rights precisely as should a tribunal of the State of Louisiana according to her laws; so that, in that sense, there is no question as to what law must be administered. But, in case of contract, the foreign law may, by the act and will of the parties, have become part of their agreement; and, in enforcing this, the law of the forum may find it necessary to give effect to a foreign law, which, without such adoption, would have no force beyond its own territory.

This, upon the principle of comity, for the purpose of promoting and facilitating international intercourse, and within limits fixed by its own public policy, a civilized State is accustomed and considers itself bound to do; but, in doing so, nevertheless adheres to its own system of formal judicial procedure and remedies. And thus the distinction is at once established between the law of the contract, which may be foreign, and the law of the procedure and remedy, which must be domestic and local. In respect to the latter the foreign law is rejected; but how and where to draw the line of precise classification it is not always easy to determine.

The principle is, that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the sub-

stance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract.

The rule deduced by Mr. Wharton, in his Conflict of Laws, as best harmonizing the authorities and effecting the most judicious result, and which was cited approvingly by Mr. Justice Hunt in *Scudder* v. *Union National Bank*, 91 U. S. 406, is, that " Obligations in respect to the mode of their solemnization are subject to the rule *locus regit actum ;* in respect to their interpretation, to the *lex loci contractus ;* in respect to the mode of their performance, to the law of the place of their performance. But the *lex fori* determines when and how such laws, when foreign, are to be adopted, and, in all cases not specified above, supplies the applicatory law." This, it will be observed, extends the operation of the *lex fori* beyond the process and remedy, so as to embrace the whole of that residuum which cannot be referred to other laws. And this conclusion is obviously just ; for whatever cannot, from the nature of the case, be referred to any other law, must be determined by the tribunal having jurisdiction of the litigation, according to the law of its own locality.

Whether an assignee of a chose in action shall sue in his own name or that of his assignor is a technical question of mere process, and determinable by the law of the forum ; but whether the foreign assignment, on which the plaintiff claims is valid at all, or whether it is valid against the defendant, goes to the merits and must be decided by the law in which the case has its legal seat. Wharton, Conflict of Laws, sects. 735, 736. Upon that point Judge Kent, in *Lodge* v. *Phelps,* 1 Johns. (N. Y.) Cas. 139, said : " If the defendant has any defence authorized by the law of Connecticut, let him show it, and he will be heard in one form of action as well as in the other."

It is to be noted, however, as an important circumstance, that the same claim may sometimes be a mere matter of process, and so determinable by the law of the forum, and sometimes a matter of substance going to the merits, and therefore determinable by the law of the contract. That is illustrated in the application of the defence arising upon the Statute of Limitations. In the courts of England and America, that

defence is governed by the law of the forum, as being a matter
of mere procedure; while in continental Europe the defence
of prescription is regarded as going to the substance of the
contract, and therefore as governed by the law of the seat of
the obligation. " According to the true doctrine," says Sa-
vigny, " the local law of the obligation must determine as to
the term of prescription, not that of the place of the action;
and this rule, which has just been laid down in respect to ex-
ceptions in general, is further confirmed, in the case of pre-
scription, by the fact that the various grounds on which it
rests stand in connection with the substance of the obliga-
tion itself." Private Inter. Law, by Guthrie, 201. In this
view Westlake concurs. Private Inter. Law (ed. 1858), sect.
250. He puts it, together with the case of a merger in an-
other cause of action, the occurrence of which will be deter-
mined by the law of the former cause, *Bryans* v. *Dunseth,*
1 Mart. N. S. (La.) 412, as equal instances of the liability to
termination inherent by the *lex contractus.* But notwith-
standing the contrary doctrine of the courts of England and
this country, when the Statute of Limitations of a particular
country not only bars the right of action, but extinguishes
the claim or title itself, *ipso facto,* and declares it a nullity,
after the lapse of the prescribed period, and the parties have
been resident within the jurisdiction during the whole of that
period, so that it has actually and fully operated upon the case,
it must be held, as it was considered by Mr. Justice Story, to
be an extinguishment of the debt, wherever an attempt might
be made to enforce it. Conflict of Laws, sect. 582. That
rule, as he says, has in its support the direct authority of this
court in *Shelby* v. *Guy,* 11 Wheat. 361-371; its correctness
was recognized by Chief Justice Tindal in *Huber* v. *Steiner,*
2 Bing. N. C. 202, 211; and it is spoken of by Lord Brougham
in *Don* v. *Lippmann,* 5 Cl. & Fin. 1, 16, as " the excellent dis-
tinction taken by Mr. Justice Story." *Walworth* v. *Routh,* 14
La. Ann. 205. The same principle was applied by the Su-
preme Court of Ohio in the case of the *P. C. & St. L. Rail-
way Co.* v. *Hine's Admx.,* 25 Ohio St. 629, where it was held,
that under the act which requires compensation for causing
death by wrongful act, neglect, or default, and gives a right of

action, provided such action shall be commenced within two years after the death of such deceased person, the proviso is a condition qualifying the right of action, and not a mere limitation on the remedy. *Bonte* v. *Taylor*, 24 id. 628.

The principle that what is apparently mere matter of remedy in some circumstances, in others, where it touches the substance of the controversy, becomes matter of right, is familiar in our constitutional jurisprudence in the application of that provision of the Constitution which prohibits the passing by a State of any law impairing the obligation of contracts. For it has been uniformly held that "any law which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution." *McCracken* v. *Hayward*, 2 How. 608, 612; Cooley, Const. Lim. 285.

Hence it is that a vested right of action is property in the same sense in which tangible things are property, and is equally protected against arbitrary interference. Whether it springs from contract or from the principles of the common law, it is not competent for the legislature to take it away. A vested right to an existing defence is equally protected, saving only those which are based on informalities not affecting substantial rights, which do not touch the substance of the contract and are not based on equity and justice. Cooley, Const. Lim. 362–369.

The general rule, as stated by Story, is that a defence or discharge, good by the law of the place where the contract is made or is to be performed, is to be held of equal validity in every other place where the question may come to be litigated. Conflict of Laws, sect. 331. Thus infancy, if a valid defence by the *lex loci contractus*, will be a valid defence everywhere. *Thompson* v. *Ketcham*, 8 Johns. (N. Y.) 189; *Male* v. *Roberts*, 3 Esp. 163. A tender and refusal, good by the same law, either as a full discharge or as a present fulfilment of the contract, will be respected everywhere. *Warder* v. *Arell*, 2 Wash. (Va.) 282. Payment in paper-money bills, or in other things, if good by the same law, will be deemed a sufficient payment everywhere. 1 Brown, Ch. 376; *Searight* v. *Calbraith*,

4 Dall. 325; *Bartsch* v. *Atwater*, 1 Conn. 409. And, on the other hand, where a payment by negotiable bills or notes is, by the *lex loci*, held to be conditional payment only, it will be so held even in States where such payment under the domestic law would be held absolute. So, if by the law of the place of a contract equitable defences are allowed in favor of the maker of a negotiable note, any subsequent indorsement will not change his rights in regard to the holder. The latter must take it *cum onere*. *Evans* v. *Gray*, 12 Mart. (La.) 475; *Ory* v. *Winter*, 4 Mart. N. S. (La.) 277; *Chartres* v. *Cairnes*, id. 1; Story, Conflict of Laws, sect. 332.

On the other hand, the law of the forum determines the form of the action, as whether it shall be assumpsit, covenant, or debt. *Warren* v. *Lynch*, 5 Johns. (N. Y.) 239; *Andrews* v. *Herriot*, 4 Cow. (N. Y.) 508; *Trasher* v. *Everhart*, 3 Gill & J. (Md.) 234; *Adams* v. *Kers*, 1 Bos. & Pul. 360; *Bank of the United States* v. *Donally*, 8 Pet. 361; *Douglas* v. *Oldham*, 6 N. H. 150. In *Le Roy* v. *Beard*, 8 How. 451, where it was held that assumpsit and not covenant was the proper form of action brought in New York upon a covenant executed and to be performed in Wisconsin, and by its laws sealed as a deed, but which in the former was not regarded as sealed, it was said by this court, that it was so decided " without impairing at all the principle, that in deciding on the obligation of the instrument as a contract, and not the remedy on it elsewhere, the law of Wisconsin, as the *lex loci contractus*, must govern." It regulates all process, both mesne and final. *Ogden* v. *Saunders*, 12 Wheat. 213; *Mason* v. *Haile*, id. 370; *Beers* v. *Haughton*, 9 Pet. 329; *Von Hoffman* v. *City of Quincy*, 4 Wall. 535. It also may admit, as a part of its domestic procedure, a set-off or compensation of distinct causes of action between the parties to the suit, though not admissible by the law of the place of the contract. Story, Conflict of Laws, sect. 574; *Gibbs* v. *Howard*, 2 N. H. 296; *Ruggles* v. *Keeler*, 3 Johns. (N. Y.) 263. But this is not to be confounded, as it was in the case of *Second National Bank of Cincinnati* v. *Hemingray*, 31 Ohio St. 168, with that of a limited negotiability, by which the right of set-off between the original parties is preserved as part of the law of the contract, notwithstanding an assignment. The rules of

evidence are also supplied by the law of the forum.   *Wilcox* v.
*Hunt*, 13 Pet. 378; *Yates* v. *Thomson*, 3 Cl. & Fin. 544;
*Bain* v. *Whitehaven, &c. Railway Co.*, 3 H. of L. Cas. 1; *Don*
v. *Lippmann*, 5 Cl. & Fin. 1.   In *Yates* v. *Thomson*, *supra*, it
was decided by the House of Lords that in a suit in a Scotch
court, to adjudge the succession to personalty of a decedent
domiciled in England, where it was admitted that the English
law governed the title, nevertheless it was proper to receive in
evidence, as against a will of the decedent, duly probated in
England, a second will which had not been proved there, and
was not receivable in English courts as competent evidence,
because such a paper according to Scottish law was admis-
sible.   In *Hoadley* v. *Northern Transportation Co.*, 115 Mass.
304, it was held that if the law of the place, where a con-
tract signed only by the carrier is made for the carriage of
goods, requires evidence other than the mere receipt by the
shipper to show his assent to its terms, and the law of the
place where the suit is brought presumes conclusively such
assent from acceptance without dissent, the question of assent
is a question of evidence, and is to be determined by the law of
the place where the suit is brought.   In a suit in Connecticut
against the indorser on a note made and indorsed in New York,
it was held that parol evidence of a special agreement, different
from that imputed by law, would be received in defence,
although by the law of the latter State no agreement different
from that which the law implies from a blank indorsement
could be proved by parol.   *Downer* v. *Cheseborough*, 36 Conn.
39.   And upon the same principle it has been held that a con-
tract, valid by the laws of the place where it is made, although
not in writing, will not be enforced in the courts of a country
where the Statute of Frauds prevails, unless it is put in writing.
*Leroux* v. *Brown*, 12 C. B. 801.   But where the law of the
forum and that of the place of the execution of the contract
coincide, it will be enforced, although required to be in writing
by the law of the place of performance, as was the case of
*Scudder* v. *Union National Bank*, 91 U. S. 406, because the
*form* of the contract is regulated by the law of the place of its
celebration, and the *evidence* of it by that of the forum.

*Williams* v. *Haines*, 27 Iowa, 251, was an action upon a note

executed in Maryland, and, so far as appears from the report, payable there, where the parties thereto then resided, and which was a sealed instrument, according to the laws of that State, in support of which those laws conclusively presumed a valid consideration. By the laws of Iowa, to such an instrument the want of consideration was allowed to be proved as a defence. It was held by the Supreme Court of that State, in an opinion delivered by Chief Justice Dillon, that the law of Iowa related to the remedy merely, without impairing the obligation of the contract, and, as the *lex fori*, must govern the case. He said: "Respecting what shall be good defences to actions in this State, its courts must administer its own laws and not those of other States. The common-law rules do not so inhere in the contract as to have the portable quality ascribed to them by the plaintiff's counsel, much less can they operate to override the plain declaration of the legislative will." The point of this decision is incorporated by Mr. Wharton into the text of his Treatise on the Conflict of Laws, sect. 788, and the case itself is referred to in support of it. He deduces the same conclusion from those cases, already referred to, which declare that assumpsit is the only form of action that can be brought upon an instrument which is not under seal, according to the laws of the forum, although by the law of the place where it was executed, or was to be performed, it would be regarded as under seal, in which debt or covenant would lie, on the ground that a plea of want or failure of consideration is recognized as a defence in all actions of assumpsit. Wharton, Conflict of Laws, sect. 747.

If the proposition be sound, its converse is equally so; and the law of the place where a suit may happen to be brought may forbid the impeachment of a contract, for want of a valid consideration, which, by the law of the place of the contract, might be declared invalid on that account.

We cannot, however, accept this conclusion. The question of consideration, whether arising upon the admissibility of evidence or presented as a point in pleading, is not one of procedure and remedy. It goes to the substance of the right itself, and belongs to the constitution of the contract. The difference between the law of Louisiana and that of New York, presented

in this case, is radical, and gives rise to the inquiry, what, according to each, are the essential elements of a valid contract, determinable only by the law of its seat; and not that other, what remedy is provided by the law of the place where the suit has been brought to recover for the breach of its obligation.

On this point, what was said in *The Gaetano & Maria*, 7 P. D. 137, is pertinent. In that case the question was whether the English law, which was the law of the forum, or the Italian law, which was the law of the flag, should prevail, as to the validity of a hypothecation of the cargo by the master of a ship. It was claimed that because the matter to be proved was, whether there was a necessity which justified it, it thereby became a matter of procedure, as being a matter of evidence. Lord Justice Brett said : "Now, the manner of proving the facts is matter of evidence, and, to my mind, is matter of procedure, but the facts to be proved are not matters of procedure; they are matters with which the procedure has to deal."

It becomes necessary, therefore, to consider the applicability of the law of Louisiana as —

2. The *lex loci solutionis*.

The phrase *lex loci contractus* is used, in a double sense, to mean, sometimes, the law of the place where a contract is entered into ; sometimes, that of the place of its performance. And when it is employed to describe the law of the seat of the obligation, it is, on that account, confusing. The law we are in search of, which is to decide upon the nature, interpretation, and validity of the engagement in question, is that which the parties have, either expressly or presumptively, incorporated into their contract as constituting its obligation. It has never been better described than it was incidentally by Mr. Chief Justice Marshall in *Wayman* v. *Southard*, 10 Wheat. 1, 48, where he defined it as a principle of universal law, — "The principle that in every forum a contract is governed by the law with a view to which it was made." The same idea had been expressed by Lord Mansfield in *Robinson* v. *Bland*, 2 Burr. 1077, 1078. "The law of the place," he said, "can never be the rule where the transaction is entered into with an *express* view to the law of another country, as the rule by which it is to be governed." And in *Lloyd* v. *Guibert*, Law Rep. 1 Q. B. 115, 120,

in the Court of Exchequer Chamber, it was said that "It is necessary to consider by what general law the parties intended that the transaction should be governed, or rather, by what general law it is just to presume that they have submitted themselves in the matter." *Le Breton* v. *Miles*, 8 Paige (N. Y.), 261.

It is upon this ground that the presumption rests, that the contract is to be performed at the place where it is made, and to be governed by its laws, there being nothing in its terms, or in the explanatory circumstances of its execution, inconsistent with that intention.

So, Phillimore says: "It is always to be remembered that in obligations it is the will of the contracting parties, and not the law, which fixes the place of fulfilment — whether that place be fixed by *express words* or by *tacit implication* — as the place to the jurisdiction of which the contracting parties elected to submit themselves." 4 Int. Law, 469.

The same author concludes his discussion of the particular topic as follows: "As all the foregoing rules rest upon the presumption that the obligor has voluntarily submitted himself to a particular local law, that presumption may be rebutted, either by an express declaration to the contrary, or by the fact that the obligation is illegal by that particular law, though legal by another. The parties cannot be presumed to have contemplated a law which would defeat their engagements." 4 Int. Law, sect. DCLIV. pp. 470, 471.

This rule, if universally applicable, which perhaps it is not, though founded on the maxim, *ut res magis valeat, quam pereat,* would be decisive of the present controversy, as conclusive of the question of the application of the law of Louisiana, by which alone the undertaking of the obligor can be upheld.

At all events, it is a circumstance, highly persuasive in its character, of the presumed intention of the parties, and entitled to prevail, unless controlled by more express and positive proofs of a contrary intent.

It was expressly referred to as a decisive principle in *Bell* v. *Packard*, 69 Me. 105, although it cannot be regarded as the foundation of the judgment in that case. *Milliken* v. *Pratt*, 125 Mass. 374.

If now we examine the terms of the bond of indemnity, and the situation and relation of the parties, we shall find conclusive corroboration of the presumption, that the obligation was entered into in view of the laws of Louisiana.

The antecedent liability of Pritchard, as surety for the railroad company on the appeal bond, was confessedly contracted in that State, according to its laws, and it was there alone that it could be performed and discharged. Its undertaking was, that Pritchard should, in certain contingencies, satisfy a judgment of its courts. That could be done only within its territory and according to its laws. The condition of the obligation, which is the basis of this action, is, that McComb and Norton, the obligors, shall hold harmless and fully indemnify Pritchard against all loss or damage arising from his liability as surety on the appeal bond. A judgment was, in fact, rendered against him on it in Louisiana. There was but one way in which the obligors in the indemnity bond could perfectly satisfy its warranty. That was, the moment the judgment was rendered against Pritchard on the appeal bond, to come forward in his stead, and, by payment, to extinguish it. He was entitled to demand this before any payment by himself, and to require that the fund should be forthcoming at the place where otherwise he could be required to pay it. Even if it should be thought that Pritchard was bound to pay the judgment recovered against himself, before his right of recourse accrued upon the bond of indemnity, nevertheless he was entitled to be reimbursed the amount of his advance at the same place where he had been required to make it. So that it is clear, beyond any doubt, that the obligation of the indemnity was to be fulfilled in Louisiana, and, consequently, is subject, in all matters affecting its construction and validity, to the law of that locality.

This construction is abundantly sustained by the authority of judicial decisions in similar cases.

In *Irvine* v. *Barrett*, 2 Grant's (Pa.) Cas. 73, it was decided that where a security is given in pursuance of a decree of a court of justice, it is to be construed according to the intention of the tribunal which directed its execution, and, in contemplation of law, is to be performed at the place where the court

exercises its jurisdiction; and that a bond given in another State, as collateral to such an obligation, is controlled by the same law which controls the principal indebtedness. In the case of *Penobscot & Kennebec Railroad Co.* v. *Bartlett*, 12 Gray (Mass.), 244, the Supreme Judicial Court of Massachusetts decided that a contract made in that State to subscribe to shares in the capital stock of a railroad corporation established by the laws of another State, and having their road and treasury there, is a contract to be performed there, and is to be construed by the laws of that State. In *Lanusse* v. *Barker*, 3 Wheat. 101, 146, this court declared that " where a general authority is given to draw bills from a certain place, on account of advances there made, the undertaking is to replace the money at that place."

The case of *Cox* v. *United States*, 6 Pet. 172, was an action upon the official bond of a navy agent. The sureties contended that the United States were bound to divide their action, and take judgment against each surety only for his proportion of the sum due, according to the laws of Louisiana, considering it a contract made there, and to be governed in this respect by the law of that State. The court, however, said: " But admitting the bond to have been signed at New Orleans, it is very clear that the obligations imposed upon the parties thereby looked for its execution to the city of Washington. It is immaterial where the services as navy agent were to be performed by Hawkins. His accountability for non-performance was to be at the seat of government. He was bound to account, and the sureties undertook that he should account for all public moneys received by him, with such officers of the government of the United States as are duly authorized to settle and adjust his accounts. The bond is given with reference to the laws of the United States on that subject. And such accounting is required to be with the Treasury Department at the seat of government; and the navy agent is bound by the very terms of the bond to pay over such sum as may be found due to the United States on such settlement; and such paying over must be to the Treasury Department, or in such manner as shall be directed by the secretary. The bond is, therefore, in every point of view in which

it can be considered, a contract to be executed at the city of Washington, and the liability of the parties must be governed by the rules of the common law." This decision was repeated in *Duncan* v. *United States*, 7 Pet. 435.

These cases were relied on by the Supreme Court of New York in *Commonwealth of Kentucky* v. *Bassford*, 6 Hill (N. Y.), 526. That was an action upon a bond executed in New York conditioned for the faithful performance of the duties enjoined by a law of Kentucky authorizing the obligees to sell lottery tickets for the benefit of a college in that State. It was held that the stipulations of the bond were to be performed in Kentucky, and that, as it was valid by the laws of that State, the courts of New York would enforce it, notwithstanding it would be illegal in that State.

*Boyle* v. *Zacharie*, 6 Pet. 635, is a direct authority upon the point. There Zacharie and Turner were resident merchants at New Orleans, and Boyle at Baltimore. The latter sent his ship to New Orleans, consigned to Zacharie and Turner, where she arrived, and, having landed her cargo, the latter procured a freight for her to Liverpool. When she was ready to sail she was attached by process of law at the suit of certain creditors of Boyle, and Zacharie and Turner procured her release by becoming security for Boyle on the attachment. Upon information of the facts, Boyle promised to indemnify them for any loss they might sustain on that account. Judgment was rendered against them on the attachment bond, which they were compelled to pay, and to recover the amount so paid they brought suit in the Circuit Court for Maryland against Boyle upon his promise of indemnity. A judgment was rendered by confession in that cause, and a bill in equity was subsequently filed to enjoin further proceedings on it, in the course of which various questions arose, among them, whether the promise of indemnity was a Maryland or a Louisiana contract. Mr. Justice Story, delivering the opinion of the court, said: "Such a contract would be understood by all parties to be a contract made in the place where the advance was to be made, and the payment, unless otherwise stipulated, would also be understood to be made there;" "that the contract would clearly refer for its execution to Louisiana."

The very point was also decided by this court in *Bell* v. *Bruen*, 1 How. 169. That was an action upon a guaranty written by the defendant in New York, addressed to the plaintiffs in London, who, at the latter place, had made advances of a credit to Thorn. The operative language of the guaranty was, " that you may consider this, as well as any and every other credit you may open in his favor, as being under my guaranty." The court said : " It was an engagement to be executed in England, and must be construed and have effect according to the laws of that country," citing *Bank of the United States* v. *Daniel*, 12 Pet. 54. As the money was advanced in England, the guaranty required that it should be replaced there, and that is the precise nature of the obligation in the present case. Pritchard could only be indemnified against loss and damage on account of his liability on the appeal bond, by having funds placed in his hands in Louisiana wherewith to discharge it, or by being repaid there the amount of his advance. To the same effect is *Woodhull* v. *Wagner*, Baldw. 296.

We do not hesitate, therefore, to decide that the bond of indemnity sued on was entered into with a view to the law of Louisiana as the place for the fulfilment of its obligation ; and that the question of its validity, as depending on the character and sufficiency of the consideration, should be determined by the law of Louisiana, and not that of New York. For error in its rulings on this point, consequently, the judgment of the Circuit Court is reversed, with directions to grant a new trial.

*New trial ordered.*