### NEW YORK & CUBA MAIL S. S. CO. v. MALDONADO & CO.

(Circuit Court of Appeals, Second Circuit. May 13, 1915.)

#### No. 235.

1. MARITIME LIENS ⬤⟹60—JURISDICTION—LIEN FOR FREIGHT.

A through bill of lading provided for the transportation of a shipment by rail and water from a point in Mexico to New York. The last carrier, a steamship company, paid all prior charges and delivered the goods to the consignee in New York. *Held*, that it had a maritime lien for the freight and all charges upon the goods, notwithstanding the delivery of the goods upon the consignee's credit or his bond, and its action to recover for freight and advance charges was one on a maritime cause of action, within the jurisdiction of the United States District Court.

[Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 98; Dec. Dig. ⬤⟹60.]

2. LIMITATION OF ACTIONS ⬤⟹2—LAW GOVERNING.

Where a bill of lading for the transportation of a shipment from a point in Mexico to New York, though signed in Mexico, was a single contract, by which, upon delivery of the shipment to the consignee in New York, he was obligated to pay the specified freight charges, the time within which a suit for such charges might be brought was to be determined by the law of New York, and not by that of Mexico.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4–8; Dec. Dig. ⬤⟹2.]

Rogers, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree in favor of libelant. The action was brought to recover for freight and advance charges on 2,507 bags of peas from a point in Mexico to New York City.

James J. Franc and D. P. Hays, both of New York City, for appellant.

Burlingham, Montgomery & Beecher, of New York City (Norman B. Beecher and Roscoe H. Hupper, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] A through bill of lading was signed by the first carrier, which specified carriage by water to the west coast terminal of the Tehuantepec National Railway, thence by rail (about 190 miles) to Puerto, Mexico, thence by connecting lines to New York. The last carrier, libelant, paid all prior charges and delivered the goods to defendant in New York. The contract was a single one for the entire service, for a lump sum payable in New York. Defendant contends that the District Court had no jurisdiction of the controversy, on the ground that it was not a maritime cause of action. We do not assent to the proposition. Libelant had a maritime lien for the freight and all charges upon the goods; that it chose to let defendant take them, relying upon his credit or his bond, does not change the situation. We are satisfied that the District Court had jurisdiction of the action. Monteith v. Kirkpatrick, 3 Blatchf. 279, Fed. Cas. No. 9,721; British & F. M. Co. v. So. Pacific R. R., 72 Fed. 285, 18 C. C. A. 561.

[2] Defendant further contends that the contract is governed by the law of Mexico, and that certain provisions of that law as to the time within which actions to recover for freight shall be brought operate to defeat the action. A majority of the court are of the opinion that, although the bill of lading is in the Spanish language and was signed in Mexico, the contract was a single one, by which, upon delivery of the peas to defendant in New York, he was obligated there to pay a specified sum. The contract was to be completed in New York by tender of the goods and payment therefor; if payment be delayed, the time within which suit may be brought to recover it is to be determined by the law of New York.

Decree affirmed, with costs.

ROGERS, Circuit Judge (dissenting). This suit is for the recovery of freight alleged to be due for the transportation of merchandise from Guaymas, in the republic of Mexico, to the port of New York. The shipment was under a bill of lading entered into on September 25, 1912, in the city of Guaymas, Mexico. The bill of lading provided that the freight and charges should be paid at New York immediately after the arrival of the vessel. The merchandise was delivered at New York on November 7, 1912, but the freight and charges remain unpaid.

The respondent's answer avers that it was the mutual intention of the parties, at the time the bill of lading was entered into, executed, and delivered, "that the said bill of lading and the nature, obligation, and interpretation thereof were to be governed by the laws of the republic of Mexico." It is also averred that contracts for the transportation of property by land or sea made in Mexico are governed by the Commercial Code of the Republic of Mexico and that as to any points not covered by that Code the Civil Code of Mexico applies, if the carrier is regularly and permanently engaged in the business of transportation, and that under the Civil Code obligations and rights of action based on contracts of carriers for the transportation of property are extinguished and absolutely void without recourse after the lapse of six months from the conclusion of the voyage or car-

riage. It is also averred that under the Commercial Code of Mexico all obligations and rights of action based on contracts for the transportation of property by land or sea are extinguished and absolutely void without recourse after the lapse of one year from the conclusion of the voyage or carriage. It is also averred that the cause of action set forth in the libel did not accrue within either the aforesaid period of six months or the aforesaid period of one year prior to the commencement of the action, and that the action was not commenced within either the six months or the one year period. The cause was heard and decided on exceptions filed by libelant to the respondent's answer on the ground that the answer is insufficient to constitute a defense to the libel.

As a general rule statutes of limitation are regarded as municipal regulations founded on local policy, which are without effect outside the jurisdiction of the country enacting them. Since statutes of limitation usually affect the remedy only, the time within which an action on a contract can be brought is governed by the lex fori, and not by the lex loci contractus or the lex domicilii. And so the rule is that it is immaterial that the statutory bar has fully run against the contract in the jurisdiction where it was made, provided it has not run in the jurisdiction where the suit is brought. But a different question arises when the statute of the foreign state in which the contract was made, and by which the parties agreed the contract was to be governed, not merely bars the right of action, but extinguishes the obligation of the contract itself. And in the case at bar and under the averments of the answer the Mexican law not simply barred the remedy, but it extinguished the right of action. And under such circumstances no action can be maintained in the courts of the United States upon the contract.

The rule is stated in Dicey's Conflict of Laws (2d Ed., London, 1908) pp. 709, 710, as follows:

"Secondly. Any rule of law which solely affects, not the enforcement of a right, but the nature of the right itself, does not come under the head of procedure. Thus, if the law which governs, e. g., the making of a contract, renders the contract absolutely void, this is not a matter of procedure, for it affects the rights of the parties to the contract, and not the remedy for the enforcement of such rights. Hence any rule limiting the time within which the action may be brought, any limitation in the strict sense of that word, is a matter of procedure governed wholly by the lex fori. But a rule which, after the lapse of a certain time extinguishes a right of action—a rule of prescription in the strict sense of that word—is not a matter of procedure, but a matter which touches a person's substantive rights, and therefore is governed, not by the lex fori, but by the law, whatever it may be, which governs the right in question. Thus if, in an action incurred for debt in France, the defense is raised that the action is barred under French law by lapse of time, or that for want of some formality an action could not be brought for the debt in a French court, the validity of the defense depends upon the real nature of the French law relied upon. If that law merely takes away the plaintiff's remedy, it has no effect in England. If, on the other hand, the French law extinguishes the plaintiff's right to be paid the debt, it affords a complete defense to an action in England."

And in John Bassett Moore's American Edition of the same work the learned commentator, at page 178, citing numerous cases in support of his proposition, says:

"But if the statute in force in the jurisdiction in which the cause of action arose extinguishes the debt or obligation, and does not merely bar the remedy, it governs, and if it has taken effect no action can be maintained in another jurisdiction."

In Beal's work on Conflict of Laws, vol. 3, p. 520, it is said, in speaking of where suit is brought in a foreign court:

"If it is claimed that remedy is barred by the statute of limitations, it is the statute of the forum which decides, unless, indeed, some statute which has power to do so has actually extinguished the right. That may happen where it was a condition of the right at the time of its creation that it should be exercised within a certain time, or where (as often in the civil law) the lapse of time extinguishes the right itself (prescription liberatoire)."

The provision in the Mexican law which extinguished the right of action discharged the obligation of the contract. If it affected the remedy only, it would be a matter of procedure simply, and without effect in our jurisdiction. But as it does not relate to procedure, and affects the contract itself, this court must recognize and give effect to it. Thus in Gibbs & Sons v. Société Industrielle et Commerciale des Metaux, 25 Q. B. Div. 309, 405 (1890), Lord Esher, in speaking of a contract made in one country and sued upon in another, said:

"Therefore, if there be a bankruptcy law, or any other law, of such country, by which a person who would otherwise be liable under the contract would be discharged, and the facts be such as to bring that law into operation, such law would be a law affecting the contract, and would be applicable to it in the country where the action is brought. That, at any rate, is the law of England on the subject. So where a contract is made or is to be performed in a foreign country, so as to be a contract of that country, and there is a bankruptcy law, or the equivalent of a bankruptcy law, of that country, by which, under the circumstances that have occurred, a party to the contract is discharged from liability, he will be discharged from liability in this country."

In Baker v. Stonebraker's Adm'rs, 36 Mo. 338, 349 (1865), the court said:

"The doctrine is well established that, where an act of this kind operated to extinguish the contract or debt itself, the case no longer falls within the law of limitations on the remedy merely. In such case, when the debt or judgment is sued on in another state, the lex loci contractus, and not the lex fori, is to govern. Sto. Confl. of Laws, § 582; Huber v. Steiner, 2 Bing. N. C. 202. These authorities admit a qualification, that 'the parties are within the jurisdiction during all the period of the statute, so that it has actually operated on the case.' This qualification is to be understood of cases where the statute itself expressly makes exceptions of the absence of the parties beyond the jurisdiction, in which case it would not operate on them. But where, as in this case, the statute makes no exception of the absent party, but is absolute in its terms, this qualification is inapplicable. 1 Smith's Lead. Cas. 368."

In Pritchard v. Norton, 106 U. S. 124, 129, 1 Sup. Ct. 102, 106, 27 L. Ed. 104 (1882), the Supreme Court, speaking through Mr. Justice Matthews said:

"The principle is that whatever relates merely to the remedy and constitutes part of the procedure is determined by the law of the forum, for matters of process must be uniform in the courts of the same country; but whatever goes to the substance of the obligation and affects the rights of the parties, as growing out of the contract itself, or inhering in it or attaching to it, is governed by the law of the contract."

That which discharges a contract "goes to the substance of the obligation," and is therefore governed by the law of the contract, and that in this case is the law of Mexico.

In Wayman v. Southard, 10 Wheat. 1, 48, 6 L. Ed. 253 (1825), Chief Justice Marshall declared that:

"The principle that in every forum a contract is governed by the law with a view to which it was made" is a principle of universal law.

And in Lloyd v. Guibert, Law Rep. 1 Q. B. 115, 120, in the Court of Exchequer Chamber, it was said that:

"It is necessary to consider by what general law the parties intended that the transaction should be governed, or rather by what general law it is just to presume that they have submitted themselves in the matter."

It may be argued that as under the contract payment was to be made in New York City, and it was there that default was made, the right of action accrued in New York and is on that account to be governed by the New York law; but in Dicey on the Conflict of Laws, that distinguished authority says:

"There is a great uncertainty as to what is the law governing a contract for through carriage of person or goods, which may often be partly by land and partly by water, from a place (e. g., London) in one country to a place (e. g., Paris) in another. Here, as elsewhere, the only ultimate test for determining the law by which a contract is governed is the presumed intention of the parties." 2d Ed., p. 580.

In the case at bar the intention of the parties is not left to inference, as the answer expressly alleges that the parties mutually intended that the contract should be governed by the Mexican law. That allegation must be accepted as true, as the case is heard on the bill and answer.

I have emphasized the fact that the answer of the respondent alleges that the intention of the parties to the contract was that it should be governed by the Mexican law, and that their intention is controlling. If, however, there had been no allegation that such was the intention of the parties, and this court had been left to apply the law applicable to a case in which there was no evidence outside the bill of lading itself as to the intention of the parties, the same result would be arrived at, and it would be necessary to hold that the law of Mexico governed the contract. The contract was made in Mexico, is in the Spanish language—the language of Mexico—and contains nothing to indicate that the owners of either the ship or the goods are not Mexicans, or that it was intended that the contract was to be governed in any respect by the law of New York. It contains a stipulation that:

"The freight and charges on said goods shall be paid at New York (ship lost or not lost) as in the margin, including primage and average, if any, according to the York-Antwerp rules, immediately after the arrival of the vessel, without rebate or discount."

To the extent specified the contract was not subject to the Mexican law, but in other respects it was. The York-Antwerp rules were rules drawn up in 1864 at York in England, and adopted in 1877 at Antwerp in Belgium, at international conferences of the more im-

portant mercantile associations of the United States, as well as of the maritime countries of Europe. The bill of lading also provides that the goods were to be carried by vessel from ·Guaymas, Mexico, to Salina Cruz, Mexico, where they were to be delivered to the Tehuantepec· National Railway, to be carried by such railway or other system of transportation to Puerto, Mexico, and there delivered to any vessel of the connecting lines to be carried from said Puerto, Mexico, to New York. The transportation was· thus in part on land and in part on the sea.

In Liverpool & Great Western Steam Company v. Phenix Insurance Co., 129 U. S. 397, 9 Sup: Ct. 469, 32 L. Ed. 788 (1889),. the Supreme Court reviewed at length the authorities relating to contracts of affreightment which involved carriage on the high seas,. where the contract was entered into in one country and delivery was to be made in another. In that case the bill of lading was made at New York, and the goods were to be carried from that port to Liverpool. The thing contracted for was to be chiefly performed on ·the high seas, and was to end at the port of Liverpool. The court held that the fact that the goods were to be delivered at Liverpool, and the freight and primage were payable there in sterling currency, did not make the contract an English contract. Mr. Justice Gray, speaking for the court, said:

"This review of the principal cases demonstrates that according to the great preponderance, if not the uniform concurrence, of authority, the general rule, that the nature, the obligation, and the interpretation of a contract are to be governed by the law of the place where it is made, unless the parties at the time of making it have some other law in view, requires a contract of affreightment, made in one country between citizens or residents thereof, and the performance of which begins there, to be governed by the law of that country, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other country."

In my view of the case the law of Mexico controls: (1) As to the primary obligation of the contract. (2) As to the secondary obligation of the contract. (3) And as to the discharge of the secondary obligation.

For the reasons above stated, I think the answer constituted a defense to the libel, and that the decree of the District Court dismissing the libel should be reversed.