### MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N v. BALDRIDGE.
### No. 899.

Circuit Court of Appeals, Tenth Circuit.
April 5, 1934.

Philip E. Horan, of Omaha, Neb. (James J. Sullivan, of Denver, Colo., on the brief), for appellant.

Harry N. Haynes, of Greeley, Colo. (Louis B. Reed, of Greeley, Colo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

Appellee, as the named beneficiary in an accident insurance policy, instituted this suit. She attached a copy of the policy and the application for it, which was made a part of it, to her complaint and by reference made them a part thereof. The policy was issued by appellant, a Nebraska corporation, as insurer, to her brother, as insured, on July 1, 1927, on his said application therefor wherein he named appellee, his sister, as beneficiary and stated therein her address to be Eaton, Colorado. The policy was made and delivered to the insured at Casper, Wyoming, where he then resided. He changed his residence to Weld County, Colorado, on December 1, 1928, where he remained until his death on May 10, 1932. During that time he paid all premiums to appellant through its authorized agents in that county. His death resulted from a self-inflicted gun shot wound while insane. Suicide by one who is insane is accidental.

On the facts stated, about which there is no controversy, the court directed judgment in favor of appellee for the death benefits. The only defense pleaded in the answer was that the contract of insurance was issued to and accepted by the insured while he was a resident and citizen of the state of Wyoming, "and that agreeable to the laws of said state it was expressly provided by said policy of insurance that suicide sane or insane was not covered thereby," and that the laws of Wyoming in respect thereto are different from the laws of Colorado.

The insuring clause contained in the policy is this:

"Against loss of life, limb, sight or time, resulting directly and independently of all other causes from bodily injuries sustained through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time on account of disease contracted during the term of this policy, respectively, subject, however, to all the provisions and limitations hereinafter contained."

At the time this policy was issued Colorado had this statute (Compiled Laws of Colorado, 1921, § 2532):

"From and after the passage of this act, the suicide of a policy-holder after the first policy year, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policyholder was sane or insane."

That statute with slight and immaterial changes has been in effect since 1903, and has frequently been applied by the Colorado courts. Head Camp of Woodmen v. Sloss, 49 Colo. 177, 112 P. 49, 31 L. R. A. (N. S.) 831; Weber v. Head Camp, Pacific Jurisdiction, Woodmen, 60 Colo. 529, 154 P. 728; Officer v. London Guarantee & Accident Co., 74 Colo. 217, 220 P. 499; Id., 78 Colo. 441, 242 P. 989; Massachusetts Protective Ass'n v. Daugherty, 87 Colo. 469, 288 P. 888; Modern Brotherhood v. Lock, 22 Colo. App. 409, 125 P. 556. In some cases cited the Colorado Supreme Court said that the statute exhibited a policy of the state on the subject and that a suicide clause such as we have here is void; but in those cases so far as the opinions show each of the policies was issued to one residing in the state. The court also applied the statute to accident policies that insured against death. The statute did not pretend to control and necessarily could not control transactions outside the state.

Of course, the laws of a state or country have not by their own virtue extra-territorial force; but on the principle of comity the courts in each state will enforce contracts made in other jurisdictions, applying thereto the laws of the state or country where the contract was made, subject to certain exceptions. Parties to a contract may stipulate for its performance elsewhere, or that fact may be established by their mutual intention at the time the contract was entered into from facts and surrounding circumstances, and

thus be inferred. Minor on Conflict of Laws (§ 159) says:

"The locus solutionis of a contract primarily depends upon the intention of the parties. It is a part of the principle of freedom of contract to choose the place where a contract shall be performed. This choice may be expressed in the contract itself; if not, it may be inferred from the surrounding circumstances.

"If no place of performance is named by the parties, a very strong presumption arises that the parties intend that it shall be performed where it is made. But though this presumption is strong, it is not conclusive, and may be rebutted by evidence, or by clear inference from the surrounding circumstances, that the parties intended that the contract should be performed elsewhere."

So in the London Assurance Co. Case, 167 U. S. 149, page 160, 17 S. Ct. 785, 789, 42 L. Ed. 113, Mr. Justice Peckham, speaking for the court, said:

"Generally speaking, the law of the place where the contract is to be performed is the law which governs as to its validity and interpretation. Story, in his work on Conflict of Laws (section 280) says: 'But where the contract is, either expressly or tacitly, to be performed in any other place, there the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its validity, nature, obligation, and interpretation, is to be governed by the law of the place of performance."

Other cases in that court that discuss and apply this rule are Coghlan v. Railroad Co., 142 U. S. 101, 12 S. Ct. 150, 35 L. Ed. 951; Hall v. Cordell, 142 U. S. 116, 12 S. Ct. 154, 35 L. Ed. 956; Pritchard v. Norton, 106 U. S. 124, 1 S. Ct. 102, 27 L. Ed. 104; Liverpool & G. W. Steam Company v. Phenix Insurance Company, 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788; Cox v. United States, 6 Pet. 172, 8 L. Ed. 359. Minor at section 160 says:

"It sometimes happens that a contract may be intended by the parties to be performed, as to different parts thereof, in several places. If the contract relates to several distinct and divisible acts, there is no difficulty in perceiving that as to each of these several acts in performance of the contract the contract may have a separate locus solutionis. In reality, they are several contracts in one."

Appellee's counsel also cites authority to the effect that it is a general rule that the place of performance of a contract for the payment of money is the place where the payment is to be made; and relying upon these principles of law and the fact that the postoffice address of the beneficiary was given as Eaton, Colorado, counsel contend that the place of performance as to appellant's obligation to her was Colorado. Therefore, he says the validity of the exemption clause as to suicide is determined by the laws of Colorado, and it is void. Under the laws of Wyoming that clause is valid. But place of payment is not specified.

The obligations of the insurer would be more burdensome if the validity of the policy was to be tested by the laws of Colorado, than by the laws of Wyoming. It was doing business in Colorado and must have known that such clause in a policy was void in that state. It is not a reasonable inference that insurer intended performance there. The beneficiary was not a party to making the contract. It cannot be assumed she had any knowledge of it prior to or at the time of its issuance and acceptance by her brother, and no intention on her part as to where it should be performed can be indulged. As to the obligations beneficial to insured personally, no such inference of intention can be indulged inasmuch as it does not appear that he had any intention of leaving Wyoming at the time he accepted the policy. As to giving his sister's address, it is equally, if not more reasonable to infer that it was for the sole purpose of communication by mail between insurer and beneficiary should occasion arise; e. g., loss of insured's sight, limb, or time on account of disease. We therefore are forced to the conclusion that there is no basis for the inference claimed by the beneficiary. The intention of insured and insurer that the contract should be performed in Colorado must have existed at the time the contract was made to sustain her case. There are no sufficient facts and circumstances in our opinion to support her contention. The laws of Wyoming must be applied in determining the validity of the exemption.

Minor at section 170 says:

"So the validity of particular provisions in an insurance policy exempting the insurer from liability in certain contingencies must in general be determined by the lex celebrationis of the contract. Like similar clauses of exemptions in bills of lading, they constitute independent collateral contracts executed * * *"

—that is, the exemption is effected as a finality as soon as the contract containing it is made, if lawful where made.

Reversed and remanded.

PHILLIPS, Circuit Judge (concurring).

I agree that the contract was not to be performed in Colorado, and concur in the result reached by Judge LEWIS.

In addition to the provision quoted by Judge LEWIS the policy contains the following:

"This policy does not cover death, disability, or other loss * * * resulting from insanity."

It is my opinion that these provisions of the policy limiting the coverage are valid, and that there was no liability to the appellee, even though the death benefit was payable in Colorado to the appellee as beneficiary upon the death of the insured.

My reasons therefor may be briefly stated. It is my opinion that,

"The law of the place of contracting determines the validity and effect of a promise with respect to * * * (f) The nature and extent of the duty for the performance of which a party becomes bound (though not the manner of performing that duty)"

—unless the parties when entering into the contract intended to be bound by the law of some other state. Restatement, Conflict of Laws (Proposed Final Draft No. 2), § 353; Northwestern Mutual L. Ins. Co. v. McCue, 223 U. S. 234, 246, 247, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; Brown v. Ford Motor Co. (C. C. A. 10) 48 F. (2d) 732, 734; Federal Surety Co. v. Minneapolis Steel & Mach. Co. (C. C. A. 8) 17 F. (2d) 242, 245, and cases there cited. See also Minor on Conflict of Laws, § 170.

Under the law of Wyoming, the provisions of the policy limiting the coverage with respect to suicide are valid. Under Colorado law, they are void. The parties cannot be presumed to have contemplated a law which would render invalid a provision which they wrote into their agreement. It should not be presumed that, after having written a provision into a contract, the parties intended it to be nugatory, and their action in that regard vain and useless. Pritchard v. Norton, 106 U. S. 124, 137, 1 S. Ct. 102, 27 L. Ed. 104; Joffe v. Bonn (C. C. A. 3) 14 F. (2d) 50, 52. . It therefore cannot be presumed that the parties to this contract intended that the law of Colorado should govern.

The provisions of the policy limiting the coverage are merely a means of defining what risks are insured against; they are in no sense immoral or wrong, or contrary to public policy. I see no reason why a United States court sitting in the state of Colorado should not give full force and effect thereto.