GRANT, J.
The facts necessary tu a determination of the question raised by this record are not in dispute.
In 1905, Mary M. Lozier, an inhabitant of Ohio, but then' temporarily sojourning in New York, in that state executed her last will, the parts whereof that are material in this controversy, being in the following words;
“Fifth: I hereby give and bequeath to Samuel Reger of the Borough of Brooklyn, county of Kings, city and state of New York, the shares of capital stock in the Lozier Motor Company of New York owned by me, in trust nevertheless to divide the same into four equal parts and to hold one of said parts for, and to pay the dividends derived therefrom to, William A. Keener, the dividends so received by said Keener to be paid by him in the proportion of two-thirds and one-third to my son Edwin R. Lozier, and his wife Eva Davies Lozier as provided in paragraph sixth of this will with reference to the *301 trust therein created, and to hold one of the three remaining parts for each of my three children, Henry A. Lozier; Jr., Bessie Lozier Gregg and Joseph T. Lozier, as herein provided, paying to each of said three children the dividends derived from the one-third part held for said child.
“In the event of the death of Joseph T. Lozier during the continuance of the trust hereby created for his benefit, the income derivable therefrom shall be paid to his next of kin during the life of Henry A. Lozier, Jr., provided the said trust continues so long.
“In the event of the death of my son Henry A. Lozier, Jr., or my daughter Bessie Lozier Gregg, the dividends derived from the trust created for his or her benefit shall be payable during the lifetime-of Joseph T. Lozier, provided the said trust continues so long, to the next of kin of such deceased child.
“No portion of the stock allotted to any one of these four trusts shall be sold during the continuance of these trusts, without the consent of the trustee and one-half the number of the beneficiaries.
“None of the trusts created in this paragraph shall continue beyond the period of ten years from the taking effect of this will.
“On the termination of the foregoing trusts the one-fourth part of the stock of the Lozier Motor Company of New York held in trust for William A. Keener, or its proceeds in the event of sale having taken place, shall be transferred and delivered over to the said William A. Keener, in trust, however, in the proportions and in the manner and for the uses and purposes described in paragraph sixth of this will; and in the event of the termination of the trust described in the said paragraph sixth prior to the termination of the other trusts created in this paragraph (.to wit, paragraph fifth) the said one-fourth part of the stock held in trust for William A. Keener shall be treated and disposed of as part of my residuary estate disposed of by paragraph seventh of this will.
“On the termination of any one of the trusts created in this paragraph", other than the trust created for William A. Keener, Ihe stock allotted to such trust, or its proceeds in the event of *302 sale having taken place, shall be transferred and delivered over to his or her issue, if any, and in default of such issue shall be treated and disposed of as part of my residuary estate disposed of by paragraph seventh of this will.
‘ ‘ Sixth: I give and bequeath to William A. Keener of the borough of Manhattan, city, county and state of New York, one-i’ourth of my residuary estate in trust nevertheless, to invest the same and pay two-thirds of the net annual income derived therefrom to my son Edwin E. Lozier during his life, and to pay one-third of the net annual income derived therefrom to Eva Davies Lozier, wife of my said son Edwin B., for life or until she remarries. On the death of my said son Edwin E. Lozier, two-thirds of the trust fund hereby created in this paragraph shall be transferred and delivered over to his issue, if any, and in default of issue the said trust shall be continued until the death or remarriage of Eva Davies Lozier, the income from the said two-thirds to be paid to the said Eva Davies Lozier for life or until she remandes, and upon her death or remarriage be treated and disposed of by paragraph seventh of this will. On the death or remarriage of the said Eva Davies Lozier, the said two-thirds to be paid to the said Eva Davies Lozier for life shall be transferred and delivered over to the issue, if any, which she may have by my son Edwin E. Lozier. In default of sueh issue the said one-third shall be treated and disposed of as part of my residuary estate disposed of by paragraph seventh of this will.
“In the event of the said Keener’s death or his refusing to act as such trustee, or resigning said trusteeship, I hereby designate Liston L. Lewis of the borough of Brooklyn, county of Kings, city and state of New York, as trustee of this fund.”
Subsequently and while the testatrix was still, or again, sojourning in New York, she executed a codicil, to the will, changing the proportions in which her son and his wife, the plaintiff, should take the income to be derived from the trust created by the body of the testament — a change not material in the present consideration, and making no other.
In 1906 the testatrix died, in this county, being still an inhabitant thereof.
*303 The probate of the will, therefore, appertained to the probate court of Cuyahoga county, in which it was accordingly duly proved and is of record.
In 1908 the plaintiff sued her husband for a divorce. The result of that suit was a decree for a divorce absolute, because of the husband’s aggression.
The wife’s claim for alimony in that action was settled by the parties while her suit was pending — the avails to her being a transfer of the interest of the defendant Edwin E. Lozier arising from the will of his mother in question.
This transfer was evidenced by the following assignment and the coupled power annexed to it:
“Know All Men by These Presents, That I, Edwin Eoss Lozier, of New York City, borough of Manhattan, county and state of New York, in consideration of ten dollars ($10) to me in hand paid by my wife, Eva Davies Lozier, and other good and valuable considerations, the receipt of which is hereby acknowledged, have sold, assigned, transferred and set over and by these presents do sell, assign, transfer and set over unto Eva Davies Lozier all my right and interest in and under the last will and testament of my late mother, Mary M. Lozier, the same having been executed on the twelfth day of December, 1905, and in and under a codicil to said will and testament of my said mother, Mary M. Lozier, dated the twenty-ninth day of October, 1906, together with every other benefit or advantage thereunder that may now be had or obtained by me, to be held, received and enjoyed by her during her life.
“And I do hereby make, constitute and appoint Eva Davies Lozier my true and lawful attorney, irrevocable, for me and in my name, place and stead, and at her own cost and expense to ask, and during her life demand, and by all lawful ways and means receive from William A .Keener, the trustee named in the paragraph marked ‘Sixth’ of the said last will and testament, and the paragraph marked ‘Second’ of the codicil thereto, all moneys directed to be paid or delivered by him to me in accordance with the terms of said will and codicil.
*304 "In Witness Whereof I have hereunto placed my hand and seal this thirteenth day of November, 1908.
“Edwin Ross Lozier, L. S.”
This paper was duly acknowledged.
The trustee named in the will was a resident of New York, as was recited in it, at the time it was made and so continued when it was proved. He accepted the trust, qualified as trustee and took upon himself the performance of the duties imposed by the relation.
The assets constituting the body of the trust, consisting of stocks, bonds and securities, were in New York when the will was made. They remained there till the death of the testatrix and thereupon passed to the first trustee and were in his possession until his subsequent death. When he died, the alternative trustee nominated in the will, the defendant Liston L. Lewis, succeeded to the trust in his stead and to the assets named, in continuity of location in New York. He received his designated appointment from a New York court, in which he gave bond, being domiciled in that state at all times after the testatrix executed the will. Before the commencement of this action, however, he sought and received an appointment as testamentary trustee from the probate court of this county, in which he has accounted as such, in accordance with the requirement of the Ohio statute in that respect. The domicile in New York of both the original and the substitute trustee was known to the testatrix at the time she made the will.
Edwin R. Lozier, the defendant and primary beneficiary in the trust, has been continuously an inhabitant of New York from a time anterior to the execution of the will until the present. His wife, the plaintiff, was domiciled there' before the date of the will and so remained till after the execution of the assignment mentioned. She removed to Ohio and was a resident of Cuyahoga county before and at the time she commenced this action.
The trustee paid the plaintiff, regularly, the income assigned to her by her former husband until the year 1915, at which time the one then executing the trust and a present defendant was notified by Edwin R. Lozier to make no other pay *305 ment to b.er, because, as he said, he had revoked the assignment theretofore made by him to her, with the power annexed to it, thereby resuming his first right and demanding that all further payments be made to him only. The defendant trustee thereupon ceased making payments to the plaintiff, and declined to do so in response to a demand by her. Whereupon she brought this action to compel payment to her, she not consenting to the purported revocation of the assignment by her former husband, or to his attempted reclamation of the trust income.
The latter, by way of defense to the action, pleaded and proved a statute of New York, enacted before the execution of the will and substantially operative in that state at all times since, as was said, and which provided as follows:
‘ ‘ The right of the beneficiary to enforce the performance of a trust to receive the income of personal property and to apply it to the use of any person, can not be transferred by assignment or otherwise. But the right and interest of the beneficiary of any other trust in personal property may be transferred.” # * =»
Before the notification that the assignment had been revoked this law was somewhat changed in verbiage, but not in substance, operation or effect.. The defendant, the trustee, answered, professing to stand neuter and taking the position, in substance, of an interpleading party.
Upon issues properly joined, to which the foregoing recited facts are relevant, the case was brought to trial in the court below without a jury.
The evidence brought forward standing in substance as has now been stated, the court, upon the facts, held the law to be Avith the defendants and for them gave judgment accordingly.
That judgment we are asked in this proceeding to reverse.
The question is single: Is the case to be determined by Ohio law or that of New York?
Its resolution, either way, makes it simple as well as single. For it is admitted that if Ohio law is to be applied Lozier must keep his engagement, because in this state and by its laws he was at liberty to make it and may be held to it: It is equally certain that the assignment that he undertook to make of' his ' *306 right to the income of the trust fund was in New York by law forbidden, and the attempt to make it was inert and a nullity. The landmark of the defendant’s concession at this point is stated in his brief as follows:
“We make no question that for most purposes the will of Mary M. Lozier, though executed in New York, is governed by the law of Ohio, where she was domiciled at the time of her death. In all matters relating to the execution of the will, to its construction and validity, the law of Ohio governs; but we think with this concession, the control of the law of Ohio ends. ’ ’
Of course courts will not be expected to be astute in helping a man depart from his agreement once made, after having received what he deemed a meritorious consideration for making it. Still, except in swaying the balance, what may appear to be an equitable footing can have no place where the question is what we have here.
In matters of contract at least, the thing to be done really is to reach the intent of the parties as to the place and its accompanying law, where and by which the transaction is to be governed. If this can be gathered from the express direction of the instrument, or impliedly from the circumstances, the in-rent may be found and the question is answered. The rare exception is where the surroundings point to an attempt to commit a fraud on the law, in which case the purpose will be defeated by disregarding the intention. If we may apply that rule to this case, we find no expression in Mrs. Lozier, senior’s, will indicating a purpose or a preference as to where the trust created by it should be executed; the words of the instrument are not demonstrative in that respect; they point out no forum other than that of the will as a whole for the administration of the trust which it creates. The mere fact that the mechanical act of signing the will was performed in New York and away from the settled domicile of the testatrix is not, we think, of itself and without more, significant to confer jurisdiction on the courts of her sojourn in administering it, or any part of it; at most it may be regarded as a circumstance which, in concurrence with others, may fix a governing intent in the matter. Indeed, we do not know that more is claimed for it here. The other *307 surroundings, said to be more or less indicative of an intention to submit the trust to the control of New York law, are that the trustees named in succession were residents of New York to the knowledge of the testatrix when she made her will; that the son then was, and has ever since been, an inhabitant of that state, as was also his wife up to a time subsequent to the assignment to her by her then husband of his share of the trust income; that the courts of New York without objection took some jurisdiction by way of ratifying the testamentary appointment of the alternative trustee and becoming the custodian of his bond, and that ■the securities constituting the body of the trust were physically in New York, to the knowledge of the testatrix, both when she executed the will and at all times since. It is said to have been the opinion of the court below that from all the circumstances an intention might be found in the mind of the testatrix, amounting to a pointing out of the New York forum rather than that of Ohio in which this trust should be discharged, thus importing into her will the New York law applicable to this part of the instrument, and that the judgment under review proceeded on that footing. The ordinary legal situs of stocks and securities is that of the person of the owner; it is ambulatory only as the owner is; it follows and keeps its identity with the domicile of the owner, primarily if not conclusively. This will shows no conscious attempt, or wish, on the part of the owner to separate the situs of the securities from herself or to prevent it from following her. She did not bring or send the securities from her own domicile to New York; they were there, fortuitously for aught that appears to the contrary, from the time of their issue. Their being there may have been an accident or from considerations of their safety or convenience of access or use by the owner. But that they were there from a design by her that they should be divorcees from herself — a mensa et thoro — does not appear, nor, as we think, can that condition be extracted as a legal consequence of all the facts and surroundings of the ease. It can not be that because one dies having a safety deposit box in each state of our Union, or a trust involved in it, his estate must by possibility be administered according to forty-nine different sets of laws, as each may be invoked, subject to all the *308 elashes thence resulting; our text-boobs on conflict of laws would in that event stand in need of revision and enlargement. In regard to what the New York court did in the case in hand, its position seems to have been no more than that of an honorable neutral, as the court below is said to have said. Its action in respect of.the bond and ancillary appointment of the nominated trustee, if more than perfunctory, was only to husband the trust in a matter of formality; it evinced no purpose of taking over the substantive jurisdiction to the exclusion of that of origin or to perform, other than an office called for by comity between jurisdictions, as we view the matter. And such is said to have been the view of the court .of common pleas at this particular point.
¥e can find in the circumstances of this case no single circumstance which we can regard as a piece of evidence going to show, that the testatrix chose the courts of New York rather than those of her own state as the instruments to execute the trust which.her will has created. And since no one circumstance points to a designation of a forum to make effectual her purpose, it follows that all the circumstances together will not work that, result.
We .have examined with proper attention the authorities cited and discussed in the briefs. For the most part they will not be more particularly mentioned here.- We have also attended to the distinction claimed to take off the effect of some of the cited- cases, the argument being that they have to do-with “the question of the-validity of the-will,, and not at all with .the question of the assignment of property subject tó a trust created by will,” We do not purpose to deal with this contention very much,- except .in- result.
It is proper to say in passing that the plaintiff also asks the benefit of Sec. 47 of the “Decedent’s Estate Law” of New York, to-neutralize the statute-of-that state forbidding assignments, already quoted. It is enough to say that the record before us does not- show by proof or exemplification that See. 47 is- on the statute books of New York at all. We-can not consider it.
.We. proceed to refer to some authorities — mostly text-books ' ■ — in muniment.of the conclusion to'which we have come in the *309 ease; keeping in view, bnt not necessarily allowing, the elaimed distinction referred to, which must run through all that we have' to say on the subject, more or less.
Wharton, Conflict of Laws, p. 1322, says: ■
1 ‘ The courts of a state which is neither the domicile of the testator, nor the place where the trust is to be administered, will remit the personal assets found there to the former state or country for the purposes of the trust, though the same would offend its own laws against perpetuities.”
Again he says, p. 1325:
“The combined effect of the New York decisions is to estab-' lish the rule that to bring a bequest of personal property within the New York statutes against perpetuities and suspension of absolute ownership, the testator must not only, have been domiciled in that state, but the will must also contemplate that the' trust shall be executed there, or at least it must not provide for its administration elsewhere.”
In Page, Wills, Sec. 35, it is said:
“Where the trust may be executed in the testator’s domicile in compliance with law there, a trustee can not make the trust unenforceable by- withdrawing the trust funds to another state where such trust is void as in unlawful restraint of alienation.”
The author allows two exceptions to the rule: When the testator directs that the proceeds be sent to another jurisdiction, there to be applied to the purposes of the trust, the courts of his domicile may help to enforce it by applying the law of that state; but not, as we infer, to defeat it. And where the testator directs specific funds to be removed to another' state, to be administered there, the law of that state will govern.
In 5 Ruling Case Law, 1024, it is said:
“The general principle that a1 will of personal property is • governed by the lex domicilii of the testator applies to the valid- • ity of a bequest of personal property as affected by the'rule' against perpetuities or suspension of the power of alienation, assuming that the will does not fix a definite location, beyond the state or country of the testator’s domicile, where "the fund is to be held or administered. And it has been held that this rule governs even though the property, the trustee and most of the *310 beneficiaries are in another state, by whose law the bequest would be void. But the purpose of the rule against perpetuities is strictly local, and so if a definite place is fixed wherein everything pertaining to the trust shall be located, then the rule changes, and its validity so far as the rule against perpetuities is concerned is tested by the law of the place that has been fixed. So a bequest of personal property, upon a trust to be administered in a foreign country, by the law of which it is valid, will not bo held invalid by the courts of the testator’s domicile, even though it contravenes the law of that domicile against per-petuities. ’'
Passing from the generalizations of text-writers, we shall now comment on one ^concrete case, with particular attention to its parallel facts with those of the case at bar in some points which we regard as important. It is Chase v. Chase, 84 Mass. (2 Allen) 101.
The will of an inhabitant of Massachusetts was made in that state and was proved therein upon the testator’s death; and the estate was administered there.
This will created a trust as follows:
“I give and bequeath unto my son George Hazen Chase and my friend Jeremiah Hacker of Philadelphia, ten shares in the New Market Manufacturing Company, and the sum of seven thousand dollars to be held by them and the survivor of them upon the following trusts, namely, that they shall keep the same invested in such stocks and securities as they may think best, and also may appropriate any part of it to the purchase of real estate, if at any time they should think it for the interest of my son and his family to do so, and pay the income and annual interest thereof to my son, Philip Brown Chase of Philadelphia, every year during his natural life, for the support of himself and his family and the education of his children, and upon the decease of my said son, my said trustees or survivor of them shall divide the principal of said trust fund in their hands in equal portions among all the issue of my said son. ’ ’
The son, Philip B. Chase, and his family were residents of Philadelphia, continuously, from the making of the will to the bringing of the action. The will relieved the trustees from giv *311 ing bond. Both trustees qualified, but before suit was brought the one resident in Philadelphia resigned and thenceforward the trust was executed by the Massachusetts trustee alone.
The son, it was alleged, proVed worthless, squandered the trust income in riotous living and allowed his family to be in want.
The wife and their five children thereupon brought their action in the courts of Massachusetts, in the county where the will had been admitted to probate.
The plaintiffs asked for “an order requiring the trustee to appropriate and pay such portion of the income annually towards the maintenance of the family of Philip B. Chase and the education of his children as the court might deem fit and proper, ■' * * and for other relief.” The report then goes on to say:
‘ ‘ The defendant, Philip B. Chase, demurred to the bill, assigning for causes that the court has no jurisdiction of his person, or of any controversy between him and the plaintiff, both being residents of a foreign state; that the bill states no case for equitable relief; and that the will, as set forth, requires the trustee to pay over the trust fund to Mm, and if any subsequent trust is therein created, it can not be enforced in this suit, or by this court.”
The whole ease was reserved for determination to the supreme judicial coui’t of Massachusetts.
That court proceeded to split the trust, so to say, by holding that Philip was a subtrustee for his family — although the will in terms vested in him the absolute right to receive the income— and held that the wife and children could enforce the secondary trust in the courts of Massachusetts, and compel the husband and father to share the usufruct with them against his will.
Coming to the question of the disputed jurisdiction of the Massachusetts court, Chief Justice Bigelow said:
“The objection to the jurisdiction of the court can not prevail. The residence of the trustee and cestuis que trust out of the commonwealth does not take away the power of this court to regulate and control the proper administration of trust estates which are created by wills made by citizens of this state, and *312 which have been proved and established in the courts of this commonwealth. The legal existence of the trust takes effect and validity from the proof of the ivill and the right of the trustee to receive the trust fund is derived from the decree of the probate court.”
The chief justice then says that the residence in the state of the acting trustee — the differentiating fact between that case and this case — is “another ground” for taking jurisdiction, his person being within the grasp of the local courts, giving the latter the physical power by injunction to restrain him from making payment of the income to the named beneficiary in the trust. But this ground is in muniment of that already taken independently, and not at all in derogation of it or of the principle substantively asserted outside of it; the court assumed full jurisdiction without that consideration.
It should seem as if here were something more than passing on the validity of the will within the only limits which the defendant’s brief allows may be done, namely, as to the formal execution, probate and reeord of it. In other words, it deals, effectually, with the essential validity of the will, in distinction from its formal validity — a difference much discussed in the cases, and the power to do -which seems to be clearly denied in the brief. It declares the paramount authority of the courts of Massachusetts “to regulate and control the proper administration of trust estates,” over that of the jurisdiction of the domicile of both the beneficiary claiming and the one resisting, at the suit of the former over the protest of the latter — his sole enjoyment of the income having been exercised for years and theretofore not denied as a vested right of his. It enters the very .citadel of the trust — and of the brief here, as we are given to understand' it — seizes upon what is claimed to be an inviolable right to the contrary, and sequestrates and deflects to the enjoys ment of others than the first taker a portion of what the will says shall be given to him.
This appears to be an essential part of the validity of the will, penetrating into the domain of administration of the trust created bjr it, to a remote effect. Certainly we do not have in the ease we are discussing the matter of the voluntary and per *313 haps eager transfer of the trust income by one who seems to have received what he regarded as value for the assignment. But we do have a case where the court of the testator’s domicile steps in and does the assigning for him, against his will, rendering to him nothing which he thinks is of value to him, and over his pleaded objection to its jurisdiction, and so works the assigning for him, asserting its essential power to do so.
It is also true that the court deduces the subtrust from the will, and so far forth may be said to construe the will — for the brief in places seems to include construction with validity and so to broaden the field of inquiry. But there was no need to construe the will as to whom it directs the trust income to be paid; as to that, the will was plain. It was to be paid to Philip Chase. But the court did interfere to divert the income from Philip after he became entitled to it, to a different application. That other application may have been forbidden by the law of Pennsylvania. It was not prohibited by the law where the will was of record and whence the power to make the changed application was derived, as the court held.
It is quite possible, as matter of course, that we do not acutely apprehend the full force of what is meant by “validity,” as that term is used in the following extract from the brief:
“As a matter of fact, both these eases deal exclusively with the question of the validity of the will, and not at all with the' question of the assignment of property subject to a trust created by will. ’ ’
We think we do understand, however, that the Massachusetts court, in the case cited, did “deal” “with the assignment of property subject to a trust created by will, ’ ’ and followed the assignment until the property was put to the use of another. It disturbed, rudely and with violence, the trust, which up to that time was getting along very well, both the trustee and the primary beneficiary — as well as the courts of their domicile, as far as we know — being satisfied with it, and neither of them invoking the authority of the Massachusetts courts. The difference is that the court made the assignment in invitum, and not the one to whom the settlor in the trust had in the first instance given the right to make it. And in so doing the court asserted *314 its jurisdiction as superior to that of one thus made tbe compulsory assignor. Whether the legal effect should be different because in one ease the transfer was forced and in the other was ■voluntary and for value, may be a question. If there is a difference in point of merit, it is to the advantage of the plaintiff, as we think. In either case it is a matter of contribution to the support of family dependents and in both eases at last it was brought to the point of the contribution being forced by the courts. The jurisdiction invoked to do the forcing resided — so the Massachusetts court says — in the domicile of the settlor and the probate of his will clear through to the end of directing for whom the trust income may in a proper ease be expended. The defendant in this case contends “that the validity of this assignment is to be determined by the law of New York” — the domicile of the testator and the probate of her will being in Ohio.
We probably fail to grasp, or at least to appreciate at its appraised value, the distinction, so much insisted on in the brief, that the physical presence of the stocks in New York and the domicile in that state of the assignor and the assignee in the assailed transfer, of themselves render the eases cited by the plaintiff totally inapplicable. In Chase v. Chase, supra, the domicile of all the parties was in a state outside of that which took jurisdiction. No mention is made of where the corpus of the trust fund was or in what it consisted. It was not deemed in any way decisive of what law should govern in the disposition of the case, the court proceeding entirely on other grounds to graft the sub-trust on the first one and then to administer it. The demurrer to the bill did not assign the locus of the fund as in any way testing the jurisdiction; the allegation at that point was that the cestuis — both first and secondary — resided in a foreign state. On the authority of that ease Perry, Trusts, See. 71, lays down the unqualified rule, as follows:
“If a trust is created by the will of a citizen of a particular state, and his will is allowed by the probate court of that state, and a trustee is appointed by the probate court, courts of equity will have jurisdiction over the trust, although both the trustee and the property arc beyond the jurisdiction of the court."
Our inclination is, so far as the discussion thus far has gone, *315 to hold that the undisputed facts of the case are not operative to deprive the Ohio courts of jurisdiction and to measure the rights and liabilities of the parties by the New York law disabling Mr. Lozier is a proper case from making the assignment which evidenced his engagement with his wife, otherwise meritorious and for which he agreed he had received vahie.
If, however, we are mistaken in that conclusion, another consideration is urged upon us and on which we feel we can rely with confidence in coming to a result. The principle is this: If the jurisdiction is claimed for two courts, in one of which the transaction is valid and void in the other, the intent of the parties should govern and to establish that, in the absence of stipulation by them or of circumstances pointing to a controlling implication, they must be deemed to have acted in contemplation of the validity rather than the avoidance of their engagements; in such case the presumption is against an intent to create a barren and inappropriate right.
The proposition, in the main ease relied on here, Pritchard v. Norton, 106 U. S. 124 [27 L. Ed. 104; 1 Sup. Ct. 102], is stated thus:
“A contract is governed by the law with a view to which it is made, because by the consent of the parties that law becomes a part of their agreement, and it is therefore to í>e presumed in the absence of any express declaration or controlling circumstances to the contrary that the parties had in contemplation a law according to which their contract would be upheld rather than one by which it would be defeated.”
In the opinion in that case Mr. Justice Matthews discusses, painstakingly and clearly, the whole question from both points of view — principle and authority.
The rationale of the rule is found in Phillimore, Int. Law, 469, as follows:
“It is also to be remembered that in obligations it .is the will of contracting parties, and not the law which fixes the plaee of fulfillment — whether that place be fixed by express words or by tacit implication — as the place to the jurisdiction of which the contracting parties elected to submit themselves. ® * * As all the foregoing rules rest upon the presumption that the *316 obligor has voluntarily submitted himself to a particular local law, that presumption may .be rebutted either by an express declaration to the contrary, or by the fact that the obligation is illegal by that particular law, though legal by another. The parties can not be presumed to have contemplated a law which would defeat their engagements. ’ ’
We think the same principle has been imposed by the courts of Ohio in the enforcement of contracts supposed to be tainted with usury. In Scott v. Perlee, 39 Ohio St. 63 [48 Am. Rep. 421], it is said:
“Where such a contract, in express terms, provides for a .rate of interest lawful in one but unlawful in the other state, the parties will, be presumed to contract with reference to the laws of the state where the stipulated rate is lawful, and such presumption will prevail until overcome by proof that the stipulation was a shift to impart validity to a contract for a rate of interest in fact usurious.”
In Pritchard v. Norton, supra, further comment is made of the rule as laid down in Phillimore, as follows:
“At all events, it is a circumstance highly persuasive in its character, of the presumed intention of the parties, and entitled to prevail, unless controlled by more' express and positive proofs of a contrary intent. ’ ’
We think it has not been so overcome in this case and that it ought to prevail.
The .result of its prevailing in holding one to his engagement instead of permitting him to break it, after securing its benefit, does not render the rule any less satisfactory in our estimation. We apply it, however, not for that reason, but because it states the law of the case, as we think and hold.
Upon the facts in the record, the law is with the plaintiff.
It results that the learned court who tried the case below was in error in applying to the facts the law of New York instead of Ohio.
For that reason the judgment under review is reversed. As .the material facts in the case .are not disputed; as all parties waived a jury trial in the court below, thereby submitting to the judgment of that court and by consequence to this court *317 which has now overruled that judgment, and as the judgment that should have been rendered there depends for its liquidation to a money amount only upon a computation, we now proceed to render the judgment which should have been rendered there; that the plaintiff recover according to the prayer of her petition and that the cross-petitioning defendant trustee have judgment of exoneration upon his satisfying the judgment for the plaintiff.
An entry to that effect may be prepared.
Leighley and Dunlap, JJ., concur.